08-5847-cv
Young v. Cooper Cameron Corp.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: September 9, 2009     Decided: November 12, 2009)

Docket No. 08-5847

- - - - - - - - - - - - - - - - - - - -x

ANDREW YOUNG,

         Plaintiff-Appellee,

    - v.-                                    08-5847-cv

COOPER CAMERON CORPORATION,

         Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

Before:          JACOBS, Chief Judge, POOLER and PARKER,
                 Circuit Judges.

The U.S. District Court for the Southern District of New York (Swain, J.) held on summary judgment that, as a matter of law, plaintiff-appellee Andrew Young ("Young"), a Product Design Specialist, was outside the "professional exemption" to the overtime requirements of the Fair Labor Standards Act. Following a bench trial, the court (Conti, J.) found that Cameron's violation of the FLSA was willful.

Cameron appeals both the exemption and the willfulness determinations. We affirm.

JENNIFER B. RUBIN, JOHN M. DELEHANTY, and ANDREW NATHANSON, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., New York, New York, for Appellant.

MICHAEL J.D. SWEENEY, Getman & Sweeney PLLC, New Paltz, New York; Edward Tuddenham, New York, New York, for Appellee.

DENNIS JACOBS, Chief Judge:

The overtime requirements of the Fair Labor Standards Act ("FLSA" or "the Act") are subject to an exemption for persons "employed in a bona fide . . . professional capacity," 29 U.S.C. § 213(a)(1), which is defined by regulation as work in "a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study." 29 C.F.R. § 541.3(a)(1).[1] Andrew Young worked for three years as a "Product Design Specialist II" ("PDS II") for Cooper Cameron Corporation ("Cameron"). When hired, Young had

---

[1] As both parties and the district court recognized, the 2002 version of the Code of Federal Regulations controls in this case. Accordingly, the citations in this opinion are to the 2002 Regulations.

2

approximately 20 years of engineering-type experience, and his work at Cameron involved complicated technical expertise and responsibility.  Like all of the other PDS IIs, however, Young lacked any formal education beyond a high school diploma.

Young was not paid overtime because Cameron had classified PDS IIs as exempt professionals under the FLSA. After losing his job in 2004 due to a reduction-in-force, Young sued Cameron under the FLSA, alleging that his classification as an exempt professional willfully violated the Act.

The U.S. District Court for the Southern District of New York (Swain, J.) granted summary judgment in Young's favor on the ground that he was not an exempt professional. Cameron's violation of the FLSA was found to be willful after a bench trial (Conti, J.).  Cameron appeals both the exemption and the willfulness determinations.

We now affirm, concluding that as a matter of law Young is not an exempt professional and that Cameron willfully violated the FLSA.

**I**

Young is a high school graduate. He enrolled in some courses at various universities, but did not obtain a degree. Before he was hired by Cameron, he worked for 20 years in the engineering field as a draftsman, detailer, and designer. He was a member of the American Society of Mechanical Engineers, a membership that required the recommendation of three engineers. For three of the 20 years, Young worked with what are known as hydraulic power units ("HPUs").

In the spring of 2001, Young applied for a job with Cameron, and he was offered the position of Mechanical Designer in the HPU group. This position paid an hourly wage of $26 and was classified as non-exempt under the FLSA. Young, seeking higher pay, declined.

Soon after, Young met again with Cameron. This time, Cameron offered to hire him as a PDS II--a position that Cameron had determined, through multiple internal and external analyses, was exempt from the FLSA's overtime provisions. This job paid an annual salary of $62,000 (an effective hourly wage of $29.81). Applicants were required to have twelve years of relevant experience; but no

particular kind or amount of education was required, and no PDS II had a college degree. Young accepted Cameron's offer on July 23, 2001, understanding that the position was exempt from the FLSA's overtime provisions. For his three-year tenure at Cameron, Young worked as a PDS II in the HPU group.

HPUs contain fluid under pressure for use in connection with oil drilling rigs. They are large and complex, and they are subject to a variety of industry standards, codes, and government specifications. Young was the principal person in charge of drafting plans for HPUs. This work required depth of knowledge and experience, and entailed considerable responsibility and discretion. For example, Young assimilated layers and types of specifications into a safe, functional, and serviceable design that met consumer demands, engineering requirements, and industry standards. Young personally selected various structural components of the HPU and modified certain specifications to account for new technology. In these ways, Young operated at the center of both the conceptual and physical processes of HPU creation and development.

On August 2, 2004, after losing his job in a reduction-

in-force, Young sued Cameron in federal court, alleging that Cameron had improperly and willfully classified him as an exempt professional. The district court, adopting a report and recommendation from the magistrate judge (Gorenstein, M.J.), granted partial summary judgment to Young on the exemption issue. The court held as a matter of law that the work of a PDS II is "not of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study."

A bench trial followed as to whether Cameron's FLSA violation was willful. The district court found that Cameron willfully violated the FLSA by "hir[ing] Young into the exempt PDS II position instead of the non-exempt Mechanical Designer position in order to avoid paying him overtime, even though his responsibilities did not change based on the different titles." Because Cameron's violation was willful, the court applied the three-year limitations period rather than the two-year period applicable to non-willful violations.

On appeal, Cameron raises two issues. First, it argues that the district court erred in granting summary judgment to Young on the professional exemption issue, and asks us

either to vacate the summary judgment order and remand for trial or, alternatively, to enter summary judgment in its favor.  Second, Cameron argues that any FLSA violation was non-willful.

<h1 style="text-align:center">II</h1>

We review <u>de novo</u> an order granting summary judgment, and we construe all facts in favor of the non-movant. <u>Pilgrim v. Luther</u>, 571 F.3d 201, 204 (2d Cir. 2009). Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under the FLSA, employees who work more than 40 hours per week must be compensated for each hour worked over 40 "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1). However, "employee[s] employed in a bona fide . . . professional capacity" are exempt from the FLSA's overtime requirements.  <u>Id.</u> § 213(a)(1).  And because the FLSA is a remedial statute, this exemption must be "narrowly construed."  <u>A.H. Phillips, Inc. v. Walling</u>, 324 U.S. 490, 493 (1945); <u>Martin v. Malcolm Pirnie, Inc.</u>, 949 F.2d 611,

7

614 (2d Cir. 1991).  The employer has the burden of proving that the employee clearly falls within the terms of the exemption.  See Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

The Act itself does not define the term "professional" for purposes of the exemption; it delegates that responsibility to the Secretary of Labor ("Secretary").  See id. at 160.  As relevant to this appeal, a person is an exempt professional if his

> primary duty consists of the performance of:
> [w]ork requiring knowledge of an advance[d] type
> in a field of science or learning customarily
> acquired by a prolonged course of specialized
> intellectual instruction and study, as
> distinguished from a general academic education
> and from an apprenticeship, and from training in
> the performance of routine mental, manual, or
> physical processes.

29 C.F.R. § 541.3(a)(1).[2]

"The typical symbol of the professional training and the best prima facie evidence of its possession is, of course, the appropriate academic degree, and in these

---

[2] Additionally, the employee's work must "require[] the consistent exercise of discretion and judgment in its performance," id. § 541.3(b), and the employee must receive a "salary or fee basis at a rate of not less than $170 per week," id. § 541.3(e).  These elements are not at issue in this appeal.

professions an advanced academic degree is a standard (if not universal) prerequisite." 29 C.F.R. § 541.301(e)(1). So it is not the case that "anyone employed in the field of . . . engineering . . . will qualify for exemption as a professional employee by virtue of such employment." Id. § 541.308(a). At the same time, "the exemption of [an] individual depends upon his duties and other qualifications." Id. "The field of 'engineering' has many persons with 'engineer' titles, who are not professional engineers, as well as many who are trained in the engineering profession, but are actually working as trainees, junior engineers, or draftsmen." Id. § 541.308(b). Thus "technical specialists must be more than highly skilled technicians" to be eligible for the professional exemption. Id. § 541.301(e)(2); see also id. ("The professional person . . . attains his status after a prolonged course of specialized intellectual instruction and study.").

As the Secretary interprets the regulations, a three-part test determines whether an employee has the type of knowledge sufficient to qualify as an exempt professional. First, the employee's "knowledge must be of an advanced type

9

. . . generally speaking, it must be knowledge which cannot be attained at the high school level." 29 C.F.R. § 541.301(b). Second, the knowledge must be in a field of science or learning. Id. § 541.301(c). Third, the knowledge "must be customarily acquired by a prolonged course of specialized intellectual instruction and study." Id. § 541.301(d). The word "customarily" is key:

> The word 'customarily' implies that in the vast majority of cases the specific academic training is a prerequisite for entrance into the profession. It makes the exemption available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry, etc., but it does not include the members of such quasi-professions as journalism in which the bulk of the employees have acquired their skill by experience rather than by any formal specialized training.

Id.

It is uncontested that the job of a PDS II requires no formal advanced education. The issue is whether a position can be exempt notwithstanding the lack of an educational requirement, if the duties actually performed require knowledge of an advanced type in a field of science or learning. Cameron argues for a stand-alone "duties test" independent from any educational considerations. Young argues, and the district court held, that if advanced and

10

specialized education is not customarily required, the exemption cannot apply, regardless of the employee's duties.

We agree with Young and the district court. The regulations state that a professional is someone "[w]hose primary duty consists of the performance of [w]ork requiring knowledge of an advance type in a field of science or learning *customarily acquired by a prolonged course of specialized intellectual instruction and study*. 29 C.F.R. § 541.3(a)(1) (emphasis added). As noted above, "customarily" in this context makes the exemption applicable to the rare individual who, unlike the vast majority of others in the profession, lacks the formal educational training and degree. But where most or all employees in a particular job lack advanced education and instruction, the exemption is inapplicable: hence, the Secretary's interpretation advising that "members of such quasi-professions as journalism in which the bulk of the employees have acquired their skill by experience rather than by any formal specialized training" are not properly considered exempt professionals. See 29 C.F.R. § 541.301(d).

We therefore hold that an employee is not an exempt professional unless his work requires knowledge that is

11

customarily acquired after a prolonged course of specialized, intellectual instruction and study.  If a job does *not* require knowledge customarily acquired by an advanced educational degree--as for example when many employees in the position have no more than a high school diploma--then, regardless of the duties performed, the employee is not an exempt professional under the FLSA.

With these principles in mind, it is clear that Young is not exempt.  The undisputed evidence is that the PDS II position required no advanced educational training or instruction and that, in fact, no PDS II had more than a high school education.

Two sister courts have issued persuasive opinions on this subject.  In Vela v. City of Houston, 276 F.3d 659, 675 (5th Cir. 2001), the only decisive factors were education and discretion (the exercise of professional judgment on the job).  On that basis, the court distinguished emergency medical technicians and paramedics (who are not required to have college degrees) from nurses and athletic trainers (who are so required).  Id. (explaining that EMTs and paramedics are not exempt professionals because they "lack the educational background to satisfy the education prong of the

Learned Professional exemption").

In <u>Fife v. Harmon</u>, 171 F.3d 1173, 1177 (8th Cir. 1999), the minimum qualifications for the plaintiffs' position as Airfield Operation Specialists were "a Bachelor's degree in aviation management or a directly related field, or four years of full-time experience in aviation administration, or an equivalent combination of experience and education." The court held the exemption inapplicable: "This is advanced knowledge from a general academic education and from an apprenticeship, not from a prolonged course of specialized intellectual instruction." <u>Id.</u> (internal quotation marks omitted). The court did not separately consider the nature of the plaintiffs' duties.

Other cases similarly tie the exemption analysis to the academic requirements of the position at issue. <u>See, e.g.,</u> <u>Reich v. Wyoming</u>, 993 F.2d 739, 743 (10th Cir. 1993) (concluding that game wardens are subject to the professional exemption because they must have a degree in wildlife management, biology, or a similar field); <u>Dybach v.</u> <u>Fla. Dep't of Corr.</u>, 942 F.2d 1562, 1566 (11th Cir. 1991) ("Dybach's position [as a probation officer] did not rise to the level of a section 213(a)(1) [exempt] professional

13

because it did not require a college or an advanced degree in any specialized field of knowledge.").

Finally, the case law advanced by Cameron is neither binding on this Court nor inconsistent with our conclusion. Some of these cases either misapply (or ignore altogether) the requirement that the plaintiff's knowledge be of the type customarily acquired by a prolonged course of advanced intellectual study. See Debejian v. Atl. Testing Labs., Ltd., 64 F.Supp.2d 85, 88 (N.D.N.Y. 1999); Stevins v. Provident Constr. Co., No. 04-15189, 137 Fed.Appx. 198, 199 (11th Cir. Apr. 18, 2005). Another case cited by Cameron provides minimal justification for its holding. See Dingwall v. Friedman Fisher Assocs., P.C., 3 F. Supp. 2d 215, 218 (N.D.N.Y. 1998) (holding, without explanation, that designing electrical systems is "clearly an area requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study").

On the basis of the foregoing, we conclude that, as a matter of law, Young was not an exempt professional because he did not do work which required knowledge customarily acquired by a prolonged course of advanced intellectual

14

study.

**III**

An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the Act. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see also Herman v. RSR Sec. Svcs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999). Mere negligence is insufficient. McLaughlin, 486 U.S. at 133. The effect of a willfulness finding is to extend the statute of limitations period from two to three years. See 29 U.S.C. § 255(a). The burden is on the employee to show willfulness. Herman, 172 F.3d at 141.

We review the district court's willfulness determination de novo. Id. at 139; see also Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995). But we review the district court's underlying findings of fact for clear error. Herman, 172 F.3d at 139. Under this standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have

15

weighed the evidence differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).

The district court rejected Cameron's defense that it had exercised due diligence and good faith in classifying the PDS II position as exempt: "The question here is not whether Cameron acted in good faith when it originally determined that a PDS II should be exempt, or when it reviewed that determination in subsequent years." What matters, as the district court framed this issue, is "whether Cameron acted in good faith when it classified Young as exempt."

The district court found that "the only reason [Young] was offered the PDS II position instead of the Mechanical Designer position was because Cameron wanted to avoid paying him overtime," and that Young--notwithstanding his title of PDS II--did the work of a non-exempt Mechanical Designer.

Neither finding is clearly erroneous. Young was originally considered for employment as a Mechanical Designer. Only after Young rejected the offer of $26 per hour as a Mechanical Designer did Cameron raise with him the PDS II position. At that point, there was little discussion of the PDS II's duties because both Young and Cameron

16

understood that his duties would be about the same as those of a Mechanical Designer. And for the entire time Young worked at Cameron, he did the work of a Mechanical Designer.

The district court observed "almost no evidence to contradict Young's version of the foregoing events." The court discounted some of Cameron's testimony as not credible and found Young's version of events "more coherent," "better supported," and more credible. Finally, the court noted that Cameron's own human resources manager admitted that "the FLSA would not permit Cameron to hire Young into an exempt position and have him do the work of a non-exempt employee" and that "hiring Young into the exempt position just to avoid overtime would run afoul of the FLSA."

Cameron submits that the district court committed clear error when it found that Young was functioning as a Mechanical Designer, arguing "that the positions were different in ways that gave Cameron ample reason to conclude that the [PDS II] position was properly classified as exempt even if the [Mechanical Designer position] was not." For support, Cameron relies on the testimony of Mac Kennedy, its engineering manager and Young's supervisor:

> The main difference is in the level of experience and the amount of interaction that an engineer

17

would need to do in order for their work to be completed. A specialist can take a product from a concept to a near complete design with very little interaction, maybe a couple of questions he has to ask for clarification about the specs, whereas a designer needs a lot more interaction and direction as the design progresses.

This testimony, according to Cameron, addresses "exactly the attributes that justified [it]s decision to classify the PDS II position as exempt."

Cameron's argument answers the wrong question. This evidence might help establish that the position of PDS II differs from that of Mechanical Designer; but, as we have already noted, and even conceding that the jobs are different, what matters is whether *Young* did the work of a non-exempt Mechanical Designer, *not* whether PDS IIs generally did more advanced work than Mechanical Designers.

The district court did not err in determining that Cameron willfully violated the FLSA.

## IV

Finally, Young asks us to remand this case to the district court for an award of attorney's fees and costs associated with this appeal.

The FLSA provides that a court "shall, in addition to

18

any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Young's entitlement to fees and costs extends to this appeal. See Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 948 (2d Cir. 1959) ("Counsel for plaintiff is allowed an additional $150 for his services on this appeal."); see also Velez v. Vassallo, 203 F.Supp.2d 312, 315 (S.D.N.Y. 2002) ("[P]revailing plaintiffs in FLSA cases are entitled to attorneys' fees for prosecuting or defending appeals.") (citing Caserta).

We therefore remand this matter to the district court for the proper determination of appellate fees and costs owed to Young. See Aaron v. Bay Ridge Operating Co., 162 F.2d 665, 670 (2d Cir. 1947).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court, and we remand the case for the sole purpose of allowing the district court to award Young the reasonable fees and costs of this appeal.

19