Michael G. PIGNATARO;
Thompson R. Chase

v.

PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, a bi-State agen-
cy; John Does 1–5 and Jane Does 1–5
(agents, representatives and/or em-
ployees of the Port Authority of New
York and New Jersey)

The Port Authority of New York
and New Jersey, Appellant
in 08–3605.

Michael G. Pignataro; Thompson R.
Chase, Appellants in 08–3825

v.

Port Authority of New York and New
Jersey, a bi-State agency; John Does
1–5 and Jane Does 1–5 (agents, repre-
sentatives and/or employees of the
Port Authority of New York and New
Jersey).

Nos. 08–3605, 08–3825.

United States Court of Appeals,
Third Circuit.

Argued Nov. 19, 2009.

Filed Jan. 27, 2010.

---

Christine C. Lilore, Esq. [Argued], Wyckoff, NJ, Counsel for Appellees in 08–3605 and Appellants in 08–3825, Michael G. Pignataro and Thompson R. Chase.

Sharon K. McGahee, Esq. [Argued], Port Authority of New York & New Jersey, Law Department, Opinions & Appeals Div. New York, NY, Counsel for Appellee in 08–3825 and Appellant in 08–3605, Port Authority of New York and New Jersey, a bi-State agency.

Before: RENDELL, BARRY, and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

In this appeal the Port Authority of New York and New Jersey (the "Port Authority") challenges the District Court's grant of summary judgment in favor of Michael Pignataro and Thompson Chase. The District Court held that helicopter pilots are not exempt as "professional" employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and therefore are entitled to mandatory time-and-a-half overtime compensation. It awarded Pignataro and Chase two years of damages, rather than three, because it concluded that the Port Authority's FLSA violation was not willful. Pignataro and Thompson appeal that aspect of the District Court's order, while the Port Authority challenges the denial of the exemption and the Court's award of prejudgment interest. For the reasons that follow, we will affirm the District Court's decisions in all three respects.

## I. Background

Pignataro began working for the Port Authority as a helicopter pilot in 1982 and retired in 2004. The Port Authority hired Chase in 1977 and promoted him to helicopter pilot in 1982. Because the Port Authority classified helicopter pilots as "professional" employees under the FLSA, both Pignataro and Chase were deemed exempt from the overtime provisions of the FLSA. In April 2004, Pignataro and Chase filed a complaint in the District Court alleging that they were denied proper overtime pay under the FLSA for the previous three years.

On February 9, 2006, the District Court held that helicopter pilots are not professional employees under the FLSA and granted summary judgment in favor of Pignataro and Chase on the issue of liability only. On March 3, 2006, the Port Authority appealed this ruling, but we dismissed the appeal on February 23, 2007 because the District Court's order was not final. On August 11, 2008, the District Court entered a monetary judgment in favor of Pignataro and Chase, awarding Pignataro $67,907.23 in unpaid overtime wages plus $19,177.10 in prejudgment interest (totaling $87,084.33) and awarding Chase $50,626.80 in unpaid overtime wages plus $14,297.14 in prejudgment interest (totaling $64,923.94). Concluding that the Port Authority's violation of the FLSA was

not willful, the District Court's award was based on two years of damages, instead of three.

■ Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997). Our review of the District Court's grant of summary judgment is plenary. *Id.* We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## II. Helicopter Pilots' Classification under the FLSA

■ The FLSA[1] mandates that if an employee works more than forty hours per week, he must be compensated for overtime hours at a rate at least one-and-one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). Employees who work in a "professional capacity," however, are exempt from this rule. 29 U.S.C. § 213(a)(1).[2] Exemptions from the FLSA are to be narrowly construed against the employer, and the employer has the burden of establishing an exemption. *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1143 (3d Cir.1983). Whether helicopter pilots are exempt professionals is a mixed question of law and fact; we review

the District Court's findings of fact for clear error and exercise plenary review over its interpretation and application of the exemption. *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 691 (3d Cir.1994).

■ The applicable exemption from the FLSA urged here encompasses employees who are determined to be members of the "learned" professions, as defined by 29 C.F.R. §§ 541.3 and 541.301. An employee's status as a "learned professional" is determined by his or her duties and salary. 29 C.F.R. § 541.3. In order to qualify as a "learned professional" an employee's primary duties must consist of:

> [w]ork requiring knowledge of an advance [sic] type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes.

29 C.F.R. § 541.3(a)(1); *see also* 29 C.F.R. § 541.301(a).

While there are additional requirements for "learned professional" status, namely receipt of compensation exceeding $250[3] or more per week and duties requiring the exercise of discretion,[4] we concern ourselves initially with whether Port Authority helicopter pilots satisfy the requirements under § 541.3(a)(1). *See* 29 C.F.R. § 541.3(e). We thus consider what ad-

---

1. The parties do not dispute that the FLSA applies to the Port Authority.

2. The District Court notes that the Department of Labor revised the FLSA's regulations governing exemptions effective August 23, 2004. Because the violations alleged in Pignataro and Chase's complaint occurred prior to this revision, the District Court applied the previous version of the regulations. We will do the same—all citations are to the 2000 edition of the C.F.R., unless otherwise noted.

We note, however, that under the current regulations we would likely reach the same result.

3. Under the current version of the regulations, this threshold is $455 per week. 29 C.F.R. § 541.300 (2009).

4. This has become known as the "short test," applicable to employees who earn more than $250 per week. *Reich*, 13 F.3d at 698 n. 15.

vanced knowledge "in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" entails, and then examine whether Pignataro and Chase's primary duties required such advanced knowledge.

Advanced knowledge is knowledge "which cannot be attained at the high school level," 29 C.F.R. § 541.301(b), and which has been obtained through "prolonged study." 29 C.F.R. § 541.300. The learned professional exemption is available for professions where, in the "vast majority of cases," the employee is required to have "specific academic training." 29 C.F.R. § 541.301(d). The exemption does not apply to occupations in which "the bulk of the employees have acquired their skill by experience." *Id.* An "advanced academic degree is a standard (if not universal) prequisite [sic]" and is, in fact, "the best prima facie evidence of [professional training]." 29 C.F.R. § 541.301(e)(1). The requirement that the employee's knowledge be from a field of science or learning "serves to distinguish the professions from the mechanical arts where in some instances the knowledge is of a fairly advanced type, but not in a field of science or learning." 29 C.F.R. § 541.301(c). Examples of professions included in the "learned professional" exemption are the fields of "law, medicine, nursing, accounting, actuarial computation, engineering,

architecture, teaching, various types of physical, chemical, and biological sciences, including pharmacy." 29 C.F.R. § 541.301(e)(1).

Although a college or other specific degree may not be *per se* required to qualify as a "learned professional," it is clear that employees must possess knowledge and skill "which cannot be attained at the high school level" and which has been obtained through "prolonged study." 29 C.F.R. §§ 541.301(b); 541.300. Furthermore, some type of *academic*[5] degree is required, as opposed to skill acquired through experience. 29 C.F.R. § 541.301(e)(1).

We next examine whether the training and study Pignataro and Chase were required to complete constitute "advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."[6] In order to qualify for their jobs, Port Authority helicopter pilots must fulfill the following requirements: (1) log 2,000 hours of flying time in helicopters; (2) earn a commercial helicopter pilot certificate with a helicopter instrument rating;[7] (3) earn a Federal Aviation Administration ("FAA") Second Class Medical certificate; (4) have knowledge of FAA rules and regulations governing helicopter flights; and (5) earn a high school diploma or GED.

---

5. "Academic" means "[o]f, relating to, or characteristic of a school [or] [p]ertaining to liberal or classical rather than technical or vocational education." *Webster's II New Riverside Dictionary* 69 (1988).

6. The Port Authority contends that the District Court erred by not considering Pignataro and Chase's day-to-day duties and by focusing instead solely on their credentials. We find no error. The District Court properly considered whether Pignataro and Chase's primary duties *required advanced knowledge acquired by prolonged specialized instruction and study.* (App. 7.) To conduct this analysis, the District

Court needed to look at the qualifications and certifications required to perform Pignataro and Chase's daily duties as helicopter pilots at the Port Authority. The duties that the Port Authority alleges that the District Court ignored (pre-flight inspection, decisions on weather conditions, and maintaining daily flight logs, for example) do not require any further intellectual instruction or academic study than the District Court considered.

7. A helicopter instrument rating is required for pilots to fly without any visual reference to the ground.

(App. 182, 318.) In order to earn a commercial certificate, applicants must already hold a private pilot certificate and pass both a knowledge and practical test. 14 C.F.R. § 61.123. The Port Authority sends helicopter pilots to Florida for a one-week training, twice each year.

None of the certifications that helicopter pilots are required to have are academic degrees. Helicopter pilots are not required to spend a significant amount of time in a classroom in order to earn their certifications—nearly all of the instruction takes place in the air. Logging in-flight hours, in-flight instruction, and passing practical and written tests do not qualify as a "prolonged course of specialized *intellectual*[8] instruction and study." While the Port Authority is correct that helicopter pilots have "specialized knowledge" and "unique skills" (Port Authority Br. 12–13), this is not sufficient to qualify under the learned professional exemption because pilots' knowledge and skills were acquired through experience and supervised training as opposed to intellectual, academic instruction. The District Court reasoned that pilots' flight certificates require specialized instruction beyond a high school education, but do not constitute advanced academic degrees. Thus, the District Court determined that helicopter pilots are " 'merely highly trained technicians' ... and therefore do not qualify as profession-al employees under the FLSA." (App. 7–8 (citing *Martin v. Penn Line Serv. Inc.*, 416 F.Supp. 1387, 1389 (W.D.Pa.1976))). We agree and conclude that Port Authority helicopter pilots' work does not require advanced knowledge that is customarily acquired from a prolonged course of specialized instruction. We therefore do not reach the issues of whether Pignataro and Chase were salaried employees or consistently exercised discretion in their work.[9] Our reading of the regulation in light of the requirements for the job leads us to the same conclusion as the District Court. Port Authority helicopter pilots are, therefore, not "learned professionals" and are not exempt from the provisions of the FLSA.

■ The Department of Labor has reached the same conclusion. As we agree with the agency, we need not discuss the degree of deference we would owe to the agency's view on the issue.[10] The Department of Labor Wage and Hour Division has noted that the Department has taken the position that pilots are not exempt professionals because "aviation is not a 'field of science or learning,' and ... the knowledge required to be a pilot is not 'customarily acquired by a prolonged course of specialized intellectual instruction.' " Defining and Delimiting the Exemptions for Executive, Administrative,

8. "Intellectual" means of or relating to "the capacity for understanding and knowledge [or] [t]he ability to think abstractly or profoundly." *Webster's II New Riverside Dictionary* 634–35 (1988).

9. The Port Authority maintains that genuine issues of material fact exist as to the daily duties of helicopter pilots, such that submission to a jury was required. It contends that Pignataro and Chase's primary duties, including flying and preparing to fly, involved a daily exercise of discretion. Because Pignataro and Chase do not dispute the Port Authority's description of their duties, there is no genuine issue of material fact. Because we conclude that the "work requiring advanced knowledge acquired by prolonged specialized instruction and study" aspect is not satisfied, we need not reach the question of how much discretion is involved in a helicopter pilot's daily duties.

10. The Secretary of Labor's interpretation of his own regulation is controlling unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (internal quotation omitted).

Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22122, 22156 (Apr. 23, 2004) (citation omitted).

The Department of Labor Review Board (the "Board") has also decided that airline pilots are not "learned professionals" as defined by 29 C.F.R. §§ 541.3 and 541.301 because there is "no doubt" that airline pilots do not meet the "threshold prerequisite" of "formal specialized academic training in a field of science or learning." *In re U.S. Postal Serv. ANET & WNET Contracts Regarding Review & Reconsideration of Wage Rates for Airline Captains and First Officers,* ARB Case No. 98–131, 2000 WL 1251361, at *13–14 (Dep't of Labor Admin. Rev. Bd. Aug. 4, 2000). The Board found that almost all of the professions delineated in the C.F.R. as "professional" require college or graduate-level study (one exception being certain nursing degrees that require completing a college-like academic program). *Id.* In contrast:

> the training of airline pilots in this country typically does not revolve around specialized college-type academic instruction, but more-closely resembles the classic apprenticeship model—a "structured, systematic program of on-the-job supervised training" coupled with a program of related instruction.

*Id.* at *16 (citing 29 C.F.R. § 29.4 (1999)).

The Board further noted that many courts have held that a specialized college degree is required to meet the "learned professional" exemption. *Id.* at *29 n. 11. For example, the Court of Appeals for the Eighth Circuit held that "airfield operation specialists" are not learned professionals because they are only required to have a bachelor's degree in aviation man-

agement or a related field, or four years of full-time experience, or an equivalent combination of education and experience. *Fife v. Harmon,* 171 F.3d 1173, 1177 (8th Cir.1999). The *Fife* Court held that "[t]his is advanced knowledge from a general academic education and from an apprenticeship, not from a prolonged course of specialized intellectual instruction." *Id.* (internal quotation marks omitted). In addition, the Court of Appeals for the Eleventh Circuit held that probation officers are not "learned professionals" because their educational requirement (a four-year college degree) is general and not specialized. *Dybach v. State of Fla. Dep't of Corr.,* 942 F.2d 1562, 1565–66 (11th Cir.1991).

The Board and the Wage and Hour Division also noted, however, that the Court of Appeals for the Fifth Circuit in *Paul v. Petroleum Equipment Tools, Co.,* 708 F.2d 168, 175 (5th Cir.1983), concluded that an airplane pilot was a "learned professional" and was therefore exempt from the overtime provisions of the FLSA.[11] 69 Fed. Reg. at 22156; *In re U.S. Postal Serv.,* 2000 WL 1251361 at *13–14. The Board "respectfully disagree[d] with the Paul majority's analytical approach and conclusion." *In re U.S. Postal Serv.,* 2000 WL 1251361 at *14. Despite *Paul,* the Wage and Hour Division decided not to modify its position that pilots are not exempt professionals. 69 Fed.Reg. at 22156. Not surprisingly, the Port Authority urges that we should follow *Paul.* We note that *Paul* was decided approximately two decades prior to the Board's decision and the Wage and Hour Division's interpretation of the exemption that we cite, and the Paul Court

---

11. The Wage and Hour Division also notes that the District Court for the Northern District of Texas held that pilots are exempt professionals (*Kitty Hawk Air Cargo, Inc. v. Chao,* 304 F.Supp.2d 897, 901 (N.D.Tex.2004)

(adopting the *Paul* Court's reasoning)), while the District Court for the District of Oregon held that helicopter pilots are not exempt (*Ragnone v. Belo Corp.,* 131 F.Supp.2d 1189, 1193–94 (D.Or.2001)). 69 Fed.Reg. at 22156.

stated that the Wage and Hour Division's interpretations are entitled to "great weight." 708 F.2d at 173 (citation omitted).[12]

The *Paul* Court reasoned that, in order to obtain a commercial license and instrument rating, a pilot must "acquire exten- sive knowledge of aerodynamics, airplane regulations, airplane operations, instrument procedures, aeronautical charts, and weather forecasting." 708 F.2d at 172. Additionally, pilots are required to receive instruction from a flight instructor, log a certain number of hours of flight time, and pass written and practical tests.[13] *Id.* The

12. We question whether the Court of Appeals for the Fifth Circuit would reach the same result if the issue were presented today. Since deciding *Paul,* that Court has issued two other opinions on similar issues. It held that emergency medical services employees do not have the necessary academic training to be "learned professionals" because they are not required to have a college degree and instead need only "didactic training, clinical experience, and field internship." *Vela v. City of Houston,* 276 F.3d 659, 675 (5th Cir.2001). The *Vela* Court cited a District of Maryland case, *Quirk v. Balt. County,* 895 F.Supp. 773 (D.Md.1995), in which the Court found that paramedics are not learned professionals be- cause they were only required to have 600 hours of classroom and field training. In contrast, the Fifth Circuit has also held that athletic trainers satisfy the education compo- nent of the learned professionals exemption because they are required to have "(1) a bach- elor's degree in any field; (2) 1800 hours of apprenticeship over a three-year period; (3) completion of 53–hour credit college courses [in specific areas of study]; and (4) a C.P.R. test." *Owsley v. San Antonio Indep. Sch. Dist.,* 187 F.3d 521, 524–25 (5th Cir.1999). The *Owsley* Court cited *Paul* in analogizing this training to that of airline pilots. *Id.*

13. The *Paul* majority notes that even though there is no evidence in the record that an "airline transport pilot certificate with single and multiengine class ratings" was required for Paul to fly, he nonetheless had this certifi- cate. *See* 708 F.2d at 171 ("[H]aving been hired as a pilot with a listed skill level, Paul is in no position to now suggest that less was 'required' by [his employer] simply because the law required less."). Here, we do not look to see whether Chase and Pignataro have more training or education than is required for their job—we look only at whether their employment involves duties requiring knowl- edge that is "customarily acquired" by a pro- longed course of specialized intellectual in- struction and study. The specific training

and qualifications of an individual plaintiff are not relevant to this determination. In- stead, in assessing whether knowledge is "customarily acquired" through intellectual instruction, we consider what is required for "the bulk of the employees" in an asserted profession. 29 C.F.R. § 541.301(d); *see also* 29 C.F.R. § 541.301(d) (2009) ("The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where special- ized academic training is a standard prerequi- site for entrance into the profession.... The learned professional exemption ... does not apply to occupations in which most employ- ees have acquired their skill by experience rather than by advanced specialized intellec- tual instruction.").

Thus, in a field where most employees gain their skills through intellectual instruction, an individual employee who gained his skills through experience may still be exempt under the FLSA. The *Paul* Court seems to have focused more on Paul's individual situation than the regulations permit. *See* 708 F.2d at 174 ("[W]e do not decide that company pilots as a class perform exempt professional work. We face here only a pilot like Paul with the highest flight rating, considerable training, and job experience."). We cannot endorse this approach. *See also Dybach,* 942 F.2d at 1565 (finding that the determinative factor is the education that the job requires, not the edu- cation that the employee actually has); *In re U.S. Postal Serv.,* 2000 WL 1251361 at *14:
[A] close analysis of the specialized aca- demic training provided to members of a job classification is a threshold step in de- termining whether the occupation gener- ically meets the professional exemption test. Consequently, we share the view of the dis- senting opinion in *Paul* that it is analytically incorrect to "work backwards" from the level of an employee's knowledge and skill in order to infer that the occupation re- quires the kind of advanced academic in- struction contemplated by the regulations.

*Paul* Court determined that this is "extensive, formal, and specialized training" that is comparable to that undergone by nurses, accountants, and actuaries. *Id.* at 173. However, in light of our own analysis set forth above, that is consistent with the Department of Labor's interpretation of the regulations, we decline to follow the reasoning of the *Paul* Court.

Based on the above analysis, we will affirm the District Court's grant of summary judgment.

### III. Willfulness

▮▮▮ Pignataro and Chase challenge the District Court's finding that the Port Authority's violation of the FLSA was not willful, and that they were thus entitled to only two years of back pay, not three. 29 U.S.C. § 255(a). To establish that the Port Authority's violation of the FLSA was willful, Pignataro and Chase must prove that the Port Authority knew it was violating the FLSA or acted in reckless disregard of whether it was violating the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Whether a violation of the FLSA is willful is a question of fact that is reviewed for clear error. *See Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir.2005).

Pignataro and Chase contend that the Port Authority willfully violated the FLSA because the Port Authority denied their repeated requests to be paid time-and-a-half for overtime, and because others who had similar jobs (e.g., Chief Pilot and Chief Mechanic) were paid time-and-a-half for overtime. At best, this conduct would constitute only a negligent violation of the FLSA, and, standing alone, it does not rise to the level necessary to show that the Port Authority knew or recklessly disregarded a risk that it was violating the FLSA.

Furthermore, an employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation. *McLaughlin*, 486 U.S. at 135 n. 13, 108 S.Ct. 1677. Here, Julia Basile, manager of the compensation and retirement division for the Port Authority, testified that in classifying helicopter pilots as "professional employee[s]" she relied on discussions with and "extensive research" by the law department to determine industry standards for classifying helicopter pilots. (App. 153–56.) Moreover, there was legal authority for this conclusion because the appellate decision most directly on point, *Paul*, held that airline pilots are exempt as "learned professionals." The District Court concluded that the Port Authority did not act with a "reckless disregard for the consequences, but rather, the facts indicate that [the Port Authority] made a good faith effort to comply with the law … [and the Port Authority's] actions were reasonable." (*Id.* at 15.) The Port Authority thus acted reasonably in determining that helicopter pilots were exempt from the FLSA's overtime provisions. We will affirm the District Court's ruling that the Port Authority's violation of the FLSA was not willful and that, under 29 U.S.C. § 255(a), the Port Authority is therefore liable for only two years of damages, instead of three.

### IV. Prejudgment Interest

▮▮▮ The final issue contested by the Port Authority is the District Court's award of prejudgment interest to Pignataro and Chase. We review a District Court's decision to award prejudgment interest for abuse of discretion. *Thabault v. Chait*, 541 F.3d 512, 533 (3d Cir.2008). "[I]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's discretion" and

should be awarded based on considerations of fairness. *Brock v. Richardson,* 812 F.2d 121, 126 (3d Cir.1987) (citing *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 981–82 (3d Cir.1984)). There is a presumption in favor of awarding prejudgment interest on a back pay award under the FLSA. *Id.* at 127. If prejudgment interest is denied, the District Court must explain why the usual equities in favor of such interest are not applicable. *Id.* Prejudgment interest attempts to compensate for the delay in receiving the wages as well as offset the reduction in the value of the delayed payments caused by inflation. *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir.1984) (finding that "it is ordinarily an abuse of discretion not to include prejudgment interest in a back-pay award under the FLSA."). Here, the District Court found it "equitable to award interest on damages from the commencement of this action through judgment." (App. 16.)

The Port Authority contends that it is inequitable to penalize it because there was a two-and-a-half-year delay between when the District Court granted summary judgment on February 9, 2006, and when the monetary judgment was entered on August 11, 2008. The Port Authority contends that interest should not have accrued during this period. A significant portion of this delay, however, was due to the Port Authority's premature filing of a Notice of Appeal on March 3, 2006. We dismissed this appeal and remanded the case on February 23, 2007 because the District Court's order of February 9, 2006 was not a final order. On July 5, 2007, the District Court denied the Port Authority's motion to certify that order for interlocutory appeal. The Court ultimately issued a second written opinion awarding damages to Pignataro and Chase on August 11, 2008. Therefore, the only period that could reasonably be excluded due to unfairness to the Port Authority is from July 5, 2007 to August 11, 2008, but during that time three status conferences were held and letters on the damages issue were submitted by counsel. We do not think it unfair for the District Court to have included this time period in awarding prejudgment interest. Thus, the District Court did not abuse its discretion in awarding prejudgment interest to Pignataro and Chase for the time period from February 9, 2006 to August 11, 2008.

## V. Conclusion

For the foregoing reasons, we will AFFIRM the judgment of the District Court.