**Charles HOWARD, Plaintiff,**

**v.**

**The PORT AUTHORITY OF NEW YORK and NEW JERSEY, Defendant.**

**No. 09 Civ. 2976(JSR).**

United States District Court, S.D. New York.

Feb. 16, 2010.

Joshua Samuel Carlo Parkhurst, Walter Michael Kane, Cary Kane LLP, New York, NY, for Plaintiff.

Scott Charles Occhiogrosso, Port Authority of New York and New Jersey, New York, NY, for Defendant.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiff Charles Howard brings this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid overtime wages allegedly owed to him by defendant, the Port Authority of New York and New Jersey (the "Port Authority"), which employed him as a helicopter pilot. Howard contends that the Port Authority unlawfully categorized him, as well as other helicopter pilots, as exempt from the FLSA's overtime requirements and therefore failed to pay him the time-and-a-half overtime compensation to which he was otherwise entitled for hours over forty worked per week. On October 19, 2009, Howard moved for summary judgment. The Court received briefing and held oral argument on December 7, 2009. The Court hereby grants summary judgment on the issue of liability but denies summary judgment with respect to damages issues that must now be promptly tried.

The facts relevant to this motion, undisputed on this record,[1] are as follows. Howard has worked as a helicopter pilot for the Port Authority since 1984. Pl's Rule 56.1 Statement ("Pl. 56.1") ¶1. He has regularly worked over forty hours per week but has been paid only his regular hourly wage, rather than a time-and-a-half rate for his work in excess of forty hours.

Declaration of Charles Howard dated 10/16/09 ("Howard Decl.") ¶8. This is based on an across-the-board Port Authority policy, dating back to at least 2003, to treat helicopter pilots as exempt professionals under the FLSA. *See* Declaration of Joshua Parkhurst dated 10/19/09 ("Parkhurst Decl."), Ex. D.

As stated in defendant's job listing, the duties of helicopter pilots for the Port Authority are as follows:

> Under the general supervision of the Flight Department Chief, the successful candidate will be responsible for piloting helicopters to transport Port Authority personnel, government officials and visitors to and from Port Authority facilities, and as needed to destinations in the mid-Atlantic area. Further, he/she shall participate in law enforcement missions as deemed necessary and appropriate by the Director of Public safety and/or his designees. The individual shall also be responsible for navigation according to flight assignments, maintenance of radio communications, execution of prescribed flight patterns and maneuvers, preflight inspections, maintenance of appropriate logs and reports, training and administrative duties.

Pl. 56.1 ¶2. The Port Authority requires candidates for this position to have the following qualifications:

- 2,000 hours flight time in helicopters, with 250 hours of this being twin engine time.
- Possession of a commercial helicopter pilot certificate with an instrument rating. An airline transport rating is highly desirable.

---

1. As the Port Authority did not file a statement of facts pursuant to Local Rule 56.1, those well-pleaded facts presented in Howard's Rule 56.1 statement are deemed undisputed. *See* Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

- Possession of a Federal Aviation Administration Second Class medical certificate.
- Must have knowledge of FAA rules and regulations governing helicopter flights in the NYC area.

*Id.* ¶ 4.

Neither the Port Authority nor FAA regulations require a commercial helicopter pilot to have a college degree. *Id.* ¶¶ 5–6. Howard completed high school but did not attend college. *See id.* ¶ 8. Howard's supervisor lacked a college degree. *Id.* ¶ 9.

Howard obtained a private pilot's license before graduating high school (or even obtaining a driver's license) based on his logging forty hours of flight and passing certain examinations for which he prepared by consulting commercially available study guides rather than enrolling in academic instruction. Howard Decl. ¶ 3. He obtained a commercial helicopter pilot's license in 1969, and was exempted from taking examinations required for certification because of his military experience. *Id.* ¶ 5.

■ Under the FLSA, employers must pay their employees one-and-a-half times their regular hourly wage for hours worked in excess of forty per week unless the employee is exempt from the Act's coverage. 29 U.S.C. § 207(a)(1). The FLSA exempts from this overtime requirement "any employee employed in a bona fide ... professional capacity." *Id.* § 213(a)(1). Because the FLSA is a remedial statute, its exemptions are construed narrowly, and "the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Havey v. Homebound Mortgage, Inc.,* 547 F.3d 158, 163 (2d Cir.2008).

Congress has delegated to the Secretary of Labor the authority to define by regulation the extent of the exemption for "professionals." *See* 29 U.S.C. § 213(a)(1). The Port Authority argues that Howard's position as helicopter pilot falls within the so-called "learned professional" exemption set forth in these regulations. In relevant part, the regulation exempts "any employee ... [w]hose primary duty is the performance of work ... [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a) (2009).[2] Additional interpretive regulations further elucidate the elements of this exemption. These regulations specify as follows:

(b) The phrase "work requiring advanced knowledge" means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

(c) The phrase "field of science or learning" includes the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupa-

---

**2.** This regulation also sets forth a minimum salary test, which the parties concede is met here. *See* Declaration of Scott Occhiogrosso dated 11/9/09, Ex. A (deposition of Howard) at 55 (Howard's most recent salary was over $100,000 a year).

tions that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning.

(d) The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experi-

ence rather than by advanced specialized intellectual instruction. *Id.* § 541.301.

As these regulations make clear, the "learned professional" exemption requires the employer to make three separate showings: (1) that the employee's "primary duty" is to perform work requiring "advanced knowledge"; (2) that the "advanced knowledge" is "in a field of science or learning"; and (3) that the "advanced knowledge" is "customarily acquired by a prolonged course of specialized intellectual instruction." *Id.* § 541.301(a)(1)-(3). The Second Circuit has recently reiterated the independent force of this third requirement, even when it is undisputed that a job's primary duty requires knowledge of an advanced type in a field of science or learning. *Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir.2009). Specifically, the Court of Appeals noted that, while the word "customarily" in the context of the regulation "makes the exemption applicable to the rare individual who, unlike the vast majority of others in the profession, lacks the formal educational training and degree," nonetheless, "where most or all employees in a particular job lack advanced education and instruction, the exemption is inapplicable." *Id.* at 206.

This language, though favoring Howard's claim, does not entirely foreclose the argument the Port Authority advances here: that the commercial helicopter licensing requirements, though not the same as a formal academic degree, nonetheless amount to advanced knowledge that is acquired through a "prolonged course of specialized intellectual instruction." And this was the position espoused by the Fifth Circuit in *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168 (5th Cir.1983), where that Circuit held that a company airplane pilot was an exempt professional. There, although the employer did not offer

evidence of any educational requirements, the court took notice of the FAA regulations applicable to obtaining a commercial pilot certificate and an instrument rating, which require applicants to "demonstrate extensive aeronautical knowledge, proficiency, and experience" through ground and flight instruction as well as written and oral examinations. *Id.* at 171–72. Based on the pilot's authority to make discretionary decisions in executing his job duties—such as his authority to cancel flights or alter routes based on weather conditions—and the learned knowledge required by FAA regulations, the *Paul* court concluded that the pilot should be treated as an employee in a "learned profession." *Id.* From there, the court held that because of the required flight tests and instruction time, "pilots ... attain their status after a prolonged course of specialized instruction and study that certainly is fairly described as an intellectual endeavor, despite the distance from campus." *Id.* at 173; *see also Kitty Hawk Air Cargo, Inc. v. Chao,* 304 F.Supp.2d 897, 900–01 (N.D.Tex.2004) (following *Paul* and finding helicopter pilots non-exempt).

Most administrative and judicial authorities, however, run counter to *Paul.* To begin with, the Department of Labor's Wage and Hour Division has consistently taken the position that commercial pilots are not exempt from overtime requirements. *See, e.g.,* DOL Opinion Letter, FLSA 2009–6, 2009 WL 648998 (Jan. 14, 2009) ("The Department has taken the position that pilots are not exempt as learned professionals. We have maintained that aviation is not 'a field of science or learning' and that the knowledge required to be a pilot is not 'customarily acquired by a prolonged course of specialized intellectual instruction' within the meaning of the regulations."); *In re U.S. Postal Serv. ANET & WNET Contracts,* ARB Case No. 98–131, 2000 WL 1100166, at *15 (DOL Admin. Review Bd. Aug. 4, 2000) (reviewing Wage and Hour Division opinion letters stating that pilots are not exempt and agreeing with that conclusion).

Furthermore, courts outside the Fifth Circuit that have considered the specific issue here have concluded that helicopter pilots do not satisfy the elements of the "learned professional" exemption. *See Ragnone v. Belo Corp.,* 131 F.Supp.2d 1189, 1194 (D.Or.2001) ("Although pilots are highly skilled employees, the skill does not come from extensive academic training. The classroom time is quite limited. In comparison, jobs which typically require a college degree are not considered learned professions if the degree is in the nature of general studies."); *Martin v. Penn Line Serv., Inc.,* 416 F.Supp. 1387, 1390 (W.D.Pa.1976) (holding that helicopter pilots who performed services such as forest fire control and aerial photography "were merely highly trained technicians who exercised no control, discretion, or administrative functions in the performance of their duties," and were therefore not exempt). Most recently, in an action brought by two other Port Authority helicopter pilots, the Third Circuit affirmed a New Jersey federal district court's conclusion that pilots like Howard are not exempt professionals because "Port Authority helicopter pilots' work does not require advanced knowledge that is customarily acquired from a prolonged course of specialized instruction." *Pignataro v. Port Authority of N.Y. & N.J.,* 593 F.3d 265, 270 (3d Cir.2010). The Third Circuit held that the educational prong of the exemption was not satisfied because the "pilots' knowledge and skills were acquired through experience and supervised training as opposed to intellectual, academic instruction." *Id.*

Like the *Pignataro* court, this Court declines to follow *Paul,* and instead finds that on the undisputed facts, the Port Au-

thority has fallen short of its burden to prove that its helicopter pilots "customarily acquire[ ]" their knowledge through a "prolonged course of specialized intellectual instruction and study." As the dissent in *Paul* argued, the majority opinion in that case is logically flawed: its conclusion about the "customarily acquired" prong appears to rest solely on the inference that the knowledge required for FAA certification, because of its advanced and technical character, necessarily must be attained by a prolonged course of specialized instruction and study. *See Paul*, 708 F.2d at 175 (Randall, J., dissenting). If this prong of the learned professional exception could always be satisfied by showing that the required knowledge is sufficiently complex or specialized in substance, then this requirement, which pertains to the *means* by which such knowledge is attained, would lose all independent force.

■ On the undisputed facts before the Court, it appears that Port Authority helicopter pilots obtain the required advanced knowledge primarily through experience rather than academic study. *See* Parkhurst Decl., Ex. C; *id.* Ex. G., at 1–2. In Howard's case, his training (obtaining a high school diploma, preparing for certain exams by consulting commercial study guides, and placing out of other exams due to his military experience) does not remotely resemble a prolonged course of specialized intellectual instruction, and the Port Authority has introduced no evidence indicating that his experience is in any way atypical. Therefore, because the Port Authority has not met its burden in this respect, Howard is entitled to summary judgment finding the Port Authority liable to him for overtime pay under the FLSA.[3]

■ Howard has also moved for summary judgment in his favor on two issues related to damages: (1) whether the Port Authority's FLSA violation was "willful" and (2) whether Howard is entitled to liquidated damages under the Act. With respect to the first issue, a FLSA violation is "willful" when the employer is not merely negligent, but "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the Act]." *Young*, 586 F.3d at 207 (internal quotation marks omitted); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n. 13, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) ("If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful...."). The employee has the burden of showing willfulness, and if he is successful in making that showing, the applicable statute of limitations is extended from two to three years. *Young*, 586 F.3d at 207.

Here, the undisputed facts show that the Port Authority classified helicopter pilots as non-exempt based on the advice of counsel and after a review of administrative and judicial decisions, including *Paul*. *See* Parkhurst Decl., Ex. A (deposition of Julia Basile) at 65; *id.* Ex. G. Although this Court finds *Paul*'s holding unpersuasive for the reasons noted above, it cannot be said that the Port Authority's decision to follow *Paul*—the only circuit-level decision at the time that specifically dealt with helicopter pilots—was unreasonable as a matter of law, let alone reckless. *Accord Pignataro v. Port Authority of N.Y. & N.J.*, 2008 WL 3582799, at *3 (D.N.J. Aug. 11, 2008) (denying plaintiffs summary judgment on the issue of whether Port Authority's classification of helicopter pi-

---

3. Because the Court finds that the knowledge of helicopter pilots is not "customarily acquired by a prolonged course of specialized intellectual instruction," it is unnecessary to consider whether such knowledge, even if so acquired, is sufficiently "of an advanced type in a field of science or learning." *Cf. Young*, 586 F.3d at 205.

lots as non-exempt was willful), *aff'd*, 2010 WL 293056, at *5.

■ With respect to the second damages issue, an employer who has committed FLSA overtime violations is ordinarily liable not only for the amount of unpaid overtime, but also for liquidated damages "in an additional equal amount." 29 U.S.C. § 216(b). Liquidated damages under the FLSA are intended to be compensatory rather then punitive: they redress the "delay in receiving wages due caused by the employer's violation." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir.1999). The FLSA provides employers with an affirmative defense to liquidated damages if they can show they "acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the [Act]." *Id.* (quoting 29 U.S.C. § 260). Acting in good faith requires that an employer "first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir.1997). This showing is not an easy one for employers to make-double damages are the "norm" rather than the "exception" when the FLSA is violated. *Herman*, 172 F.3d at 142. And even if good faith is shown, the Court has the discretion, though not the obligation, to grant a liquidated damages award. 29 U.S.C. § 260.

■ Although the liquidated damages issue presents a closer call than that regarding whether the violation was willful, the Court still finds that Howard cannot prevail on summary judgment. As noted above, record evidence shows that the Port Authority's non-exemption decision was made after consultation with its legal department and based at least in part on the holding in *Paul*. As other courts have held, the advice of counsel or uncertainty in the law can at least in some circumstances support the good faith affirmative defense to liquidated damages.[4] Although, given the remedial purpose of liquidated damages under the FLSA and what appears to be the somewhat cursory nature of the Port Authority's classification decision, the Court has doubts that the Port Authority can succeed in convincing the Court to exercise its discretion in the Port Authority's favor on this issue, nonetheless, the facts in the record are sufficient to make this a triable issue.

For the above reasons, the Court hereby grants summary judgment in favor of plaintiff on the issue of the Port Authority's liability for unpaid overtime under the FLSA, but denies summary judgment on the issues of willfulness and liquidated damages. The parties are instructed to call Chambers jointly by no later than February 22, 2010 to schedule a prompt trial date on the issue of damages.

SO ORDERED.

---

4. *See, e.g., Featsent v. City of Youngstown*, 70 F.3d 900, 906–07 (6th Cir.1995) (collecting cases on advice of counsel as grounds for denying liquidated damages); *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 466 (D.C.Cir. 1976) ("We share with the District Court the view that ambiguous or complex legal requirements may provide reasonable grounds for an employer's good faith but erroneous belief that he is in conformity with the Act."), *overruled in part on other grounds, McLaughlin*, 486 U.S. at 134, 108 S.Ct. 1677.