**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3226
_____

INDAGRO SA,

Appellant

v.

VENIAMIN NILVA;
VIVA CHEMICAL CORP

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 2-07-cv-03742)
District Judge:  Honorable Madeline C. Arleo

_____

Submitted under Third Circuit LAR 34.1(a)
on March 21, 2017

Before:  AMBRO, JORDAN and ROTH, Circuit Judges

(Opinion filed: May 3, 2018)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

Indagro, S.A., sued Veniamin Nilva and Viva Chemical Corp. to collect on an arbitration award. The District Court first affirmed the arbitration award and then several years later granted summary judgment against plaintiff on its claims for enforcing an alleged partial settlement and piercing the corporate veil. For the reasons set out below, we will affirm.

I.

Viva Chemical Corp. is a closely held company owned by Veniamin Nilva and Constantine Lutsenko. Indagro, a Swiss corporation, entered into a joint venture with Viva to purchase and resell chemicals. When the joint venture failed, each party claimed ownership of the chemicals. Indagro commenced arbitration proceedings against Viva on October 20, 2005.

The arbitration hearing was held on July 11, 2006. Viva was represented by its counsel Andrew Meads and its co-owner Lutsenko; Nilva was not present for the hearing. Indagro's counsel was Andrew de Klerk. Indagro alleges that Meads and Lutsenko were also agents of Nilva. On the first day of the hearing, Viva proposed a "partial settlement" in which the hearing would be adjourned so that each party could conduct an accounting procedure of the joint venture's finances. As a condition for doing so, Indagro demanded that each party secure reciprocal personal guarantees for any potential award. Lutsenko left the settlement conference to discuss the deal with Nilva on the phone; upon returning, Lutsenko assured Indagro that both he and Nilva agreed to provide personal guarantees on behalf of Viva. The parties and arbitrator drafted a procedural order, memorializing this agreement. The order was signed by the arbitrator. The order did not, however,

mention the agreement for reciprocal personal guarantees.

The next day, Meads reported that Nilva was not willing to give a personal guarantee.[1] Meads then offered a lower personal guarantee by Lutsenko alone. Indagro's counsel notified the arbitrator of these events. In a telephone conference, the parties agreed to continue with the accounting procedure, with Indagro reserving the right to revert to an oral evidentiary hearing. After exchanging statements of account, Indagro exercised its right to revert to an oral hearing. At the conclusion of the arbitration, the arbitrator awarded Indagro $678,909.91. While Viva brought counterclaims, the arbitrator did not consider them; instead, Viva pursued those claims in a separate arbitration.

On August 8, 2007, Indagro filed this suit (1) to confirm its arbitration award against Viva, (2) to allege breach of contract by Nilva, (3) to pierce Viva's corporate veil, and (4) to demand that Nilva provide a personal guarantee. The District Court confirmed the award against Viva on November 19, 2008, but stayed its order pending the resolution of the arbitration of Viva's claims. On August 29, 2011, the District Court lifted the stay and confirmed the arbitration award for Indagro in the amount of $678,900.91, plus legal expenses, including attorneys' fees, and arbitration expenses. Viva, however, apparently has no assets.

After further trial preparation, on March 4, 2016, Nilva moved for summary

---

[1] Meads made this report in response to an email from de Klerk who had stated, "We need to formally memorialize the agreement reached between the parties. I suggest that when we get the Procedural Order we simply execute a short agreement saying that the parties agreed to request the Tribunal to enter the attached order and that the four individuals will issue the personal guarantees for payment of any award by a date certain." JA 793.

judgment, with respect to the second, third, and fourth claims. The District Court granted the motion, dismissed the matter, and closed the case. Indagro appealed.

II.[2]

A.

Indagro's second and fourth claims are premised on its assertion that Nilva entered into an oral contract with Indagro regarding a partial settlement: Nilva agreed to put up a personal guarantee for Viva in exchange for Indagro agreeing to an accounting procedure. The District Court dismissed these claims because they failed as a matter of law based on the statute of frauds. We agree. Under applicable New Jersey law, any promise of guarantorship must be in writing and signed by the guarantor or his agent.[3] Neither party disputes that the agreement for personal guarantees was never even reduced to writing. The only document memorializing the personal guarantee is the final arbitration order, in which the arbitrator noted that an agreement for personal guarantees fell through. In order to be enforceable, however, the actual agreement to provide personal guarantees must itself be reduced to writing and signed.

As a way to bypass the statute of frauds, Indagro argues that it does not seek to

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 176 (3d Cir. 2006), and 28 U.S.C. § 1332. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. *Pignataro v. Port Auth. of N.Y. & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). Summary judgment is warranted when, drawing all reasonable inferences for the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.*

[3] N.J. Stat. Ann. 25:1-15 ("A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent. The consideration for the promise need not be stated in the writing.").

enforce a personal guarantee but to remedy breach of the partial settlement agreement, which required Nilva to issue the personal guarantee. We agree with the District Court that this is a "distinction without a difference," and will affirm the District Court's grant of summary judgment on the second and fourth claims.[4]

## B.

Indagro's third claim seeks to pierce Viva's corporate veil and collect the arbitration award from Nilva in his individual capacity. Courts rarely pierce the corporate veil, "[e]xcept in cases of fraud, injustice, or the like . . .."[5] Generally, piercing the corporate veil requires the plaintiff to establish 1) that the dominant shareholder exercised sufficient control of the company that the company had no "separate existence but was merely a conduit for" the dominant shareholder, and 2) that the dominant shareholder had "abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."[6] Even assuming that Nilva exercised sufficient control over Viva, we will still affirm the District Court's grant of summary judgment because Indagro has not shown that Viva was used to perpetrate fraud or injustice.[7]

Indagro alleges that Nilva fraudulently used Viva as a shield to avoid paying

---

[4] The District Court listed as alternative grounds for summary judgment the fact that Indagro waived its right to appeal its claims against Nilva and that it did not create a genuine issue as to whether Meads and Lutsenko had actual or apparent authority to contract for Nilva. Because we affirm based on statute of frauds, we need not consider these alternative grounds.

[5] *Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*, 950 A.2d 868, 877 (N.J. 2008) (alteration in original) (internal quotation marks and citation omitted).

[6] *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 148-49 (3d Cir. 1988) (citation omitted).

[7] *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983).

Indagro and that this is demonstrated by the fact that Nilva allowed Viva's corporate status to be suspended and then reinstated right after the award was confirmed. This reinstatement was presumably accomplished to ensure there was an entity against which Indagro's award might be enforced. However, Indagro has not produced any evidence that Nilva would have been liable for the award if Viva had not been reinstated. Moreover, it is unclear that merely using a corporation to limit personal liability rises to the level of fraud required to pierce the corporate veil.[8]

Indagro additionally argues that the fact that Nilva made numerous loans to Viva constitutes inequitable conduct. Loans from shareholders generally do not justify piercing the corporate veil, unless the shareholder chooses to require repayment of the loans while the company is insolvent.[9] Here, while Nilva did make numerous loans to Viva, there is no evidence that he recalled these loans in order to drain an already insolvent company. Given the absence of such evidence, we will affirm the District Court's order of summary judgment on Indagro's third claim.

III.

For the aforementioned reasons, we will affirm the District Court's grant of summary judgment on all claims.

---

[8] *Cf. OTR Assocs. v. IBC Servs., Inc.*, 801 A.2d 407, 412 (N.J. Super. Ct. App. Div. 2002) (finding fraud when the parent company deliberately created the impression that the third party was contracting with the parent, and not the subsidiary).
[9] *Trustees of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 198 (3d Cir. 2003) (citing *Matter of Multiponics, Inc.*, 622 F.2d 709, 718 (5th Cir. 1980) and *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)).