**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3936
_____

NICOLE D. D'AMBROSIO,

Appellant

v.

CREST HAVEN NURSING & REHABILITATION CENTER

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 1-14-cv-06541)
District Judge: Honorable Jerome B. Simandle

Submitted under Third Circuit LAR 34.1 (a)
on January 9, 2018

Before: JORDAN, ROTH, <u>Circuit Judges</u> and STEARNS[*], <u>District Judge</u>

(Opinion filed: October 5, 2018)

OPINION[**]

_____

[*] The Honorable Richard G. Stearns, United States District Court Judge for the District of
Massachusetts, sitting by designation.

[**] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7, does not
constitute binding precedent.

**ROTH**, <u>Circuit Judge</u>:

Appellant Nicole D'Ambrosio sued her employer, Crest Haven Nursing & Rehabilitation Center, alleging various claims under federal and state anti-discrimination laws, as well as claims under the Family Medical Leave Act (FMLA) and its New Jersey analogue. The District Court granted summary judgment in favor of Crest Haven on all counts. For the reasons stated below, we will affirm.

## I. Factual Background

Crest Haven is a long-term care facility that is owned and operated by the County of Cape May, New Jersey. D'Ambrosio, who is African American, has been employed at Crest Haven since June 1993. At all times relevant for purposes of this appeal, D'Ambrosio has held the Civil Service Title of Senior Clerk Typist and, as a result, has received the same pay and benefits. Over the years, however, D'Ambrosio's actual job responsibilities at Crest Haven have changed several times. Some of these changes to her job responsibilities constitute the allegedly discriminatory and retaliatory conduct at issue in the present lawsuit. Thus, a brief summary of D'Ambrosio's relevant employment history follows.

### A. Admissions Director to Admissions Clerk – May 2012

From approximately August 2010 until May 2012, D'Ambrosio served as Admissions Director at Crest Haven. In this role, she was responsible for supervising other employees in the Admissions Department. On April 27, 2012, D'Ambrosio engaged in a heated telephone conversation with one of her supervisors, Crest Haven Assistant Administrator Lisa McNulla. The conversation was witnessed by another

2

supervisor, Crest Haven Administrator Linda Thornton.[1]  During the conversation, D'Ambrosio stated that her working conditions were "horrible" and that she was "overwhelmed."  She also accused McNulla and Thornton of lying to her about the projected return date of an Admissions Department employee who had been temporarily reassigned.  D'Ambrosio terminated the call by hanging up abruptly.

On May 2, 2012, McNulla and Thornton met with D'Ambrosio and a union representative to discuss their respective concerns.  During the meeting, McNulla and Thornton informed D'Ambrosio that they were removing her supervisory responsibilities because of her statements that she felt overwhelmed in the position and because they perceived her conduct during the April 27th phone call to have been insubordinate.  Following this meeting, D'Ambrosio continued to perform clerical responsibilities in the Admissions Department and retained her Civil Service Title of Senior Clerk Typist.  As such, there was no change to D'Ambrosio's salary or benefits.  D'Ambrosio later attempted to file a grievance based on the removal of her supervisory duties, but union leadership informed her that the change to her responsibilities was not considered a demotion because her salary had not been reduced.

## B.  Reassignment to Ward Clerk – December 2012

From April 2007 until September 2012, D'Ambrosio held the additional position of External Case Manager (ECM).  In September 2012, shortly before D'Ambrosio was

---

[1] In portions of the record, Thornton is alternatively referred to as Linda Lindsay.  At some point during the relevant time period she changed her last name from Lindsay to Thornton.  For purposes of consistency, we will refer to her as Linda Thornton throughout this opinion.

scheduled to go on medical leave, Thornton and Iris Drackett, the Director of Nursing, decided to modify the job description for the ECM position and fill the position with a Licensed Practical Nurse (LPN). D'Ambrosio was informed of this decision before she began a three-month medical leave on September 26, 2012, and Thornton and Drackett subsequently filled the ECM position with an LPN.

In December 2012, D'Ambrosio returned from her medical leave. Upon her return, D'Ambrosio was assigned to a Ward Clerk position. The Ward Clerk position was vacant because the employee who held the position had recently begun a medical leave. Department of Health regulations required that Crest Haven fill the Ward Clerk position and, at the time, Crest Haven was subject to an external hiring freeze. While assigned to the Ward Clerk position, D'Ambrosio continued to retain her Civil Service Title of Senior Clerk Typist and experienced no change in her salary or benefits. D'Ambrosio worked in the same building, worked the same shifts, and had the same days off as she had when she worked in the Admissions Department prior to her medical leave. Once again, despite a request by D'Ambrosio, the union declined to pursue a grievance on her behalf because the union did not consider the Ward Clerk assignment to be a demotion.

C. Denial of Scheduling Coordinator & Finance Director Positions – January 2013

In January 2013, while working in the Ward Clerk position, D'Ambrosio sent McNulla a letter expressing her interest in the Scheduling Coordinator position that had become available. Drackett, who, like D'Ambrosio, is African American, was responsible for filling the position. She interviewed D'Ambrosio and another Crest

4

Haven employee, Samantha Shelton, who had frequently been filling in as Scheduling Coordinator during the preceding months. Drackett ultimately selected Shelton for the position. In a memo documenting her reasoning, Drackett noted that she was familiar with D'Ambrosio's history at Crest Haven and "how easily . . . D'Ambrosio became stressed" and that D'Ambrosio asked "only a few questions" during her interview despite the well-known and demanding nature of the Scheduling Coordinator position.

Also in January 2013, D'Ambrosio sent a letter to Thornton expressing her interest in the position of Finance Director. D'Ambrosio sought this position despite the fact that she had never worked in finance and had no accounting experience. Thornton responded to D'Ambrosio's letter of interest and explained that she intended to assign financial responsibilities that had been held by the prior Finance Director to an accountant. An accountant subsequently took over financial reporting duties, while an employee who already worked in the Finance Department assumed the Finance Director's supervisory responsibilities. Thornton later attested that this decision allowed her to eliminate a clerical position and save money in the midst of a budget crisis.

D. EEOC Charges & Subsequent Litigation

Shortly before her return from medical leave in December 2012, D'Ambrosio filed an initial intake questionnaire with the EEOC alleging discrimination in connection with the removal of her supervisory responsibilities in the Admissions Department. The EEOC sent a Notice of Charge of Discrimination to Cape May County's Human Resources Director. The Notice informed the County that no action was necessary at that time.

5

In September 2013, D'Ambrosio filed a second Charge of Discrimination with the EEOC. This second charge alleged that D'Ambrosio was denied the Scheduling Coordinator and Finance Director positions in retaliation for filing her first charge with the EEOC.

In October 2014, the EEOC issued D'Ambrosio a Notice of Right to Sue for both charges, and D'Ambrosio subsequently commenced this lawsuit.

## II. Jurisdiction & Standard of Review

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment.[2] Summary judgment is warranted when, drawing all reasonable inferences for the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3]

## III. Discussion

D'Ambrosio alleges claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964,[4] discrimination and retaliation in violation of the New Jersey Law Against Discrimination (NJLAD),[5] interference and retaliation in violation of the FMLA,[6] and interference and retaliation in violation of the New Jersey Family Leave Act (NJFLA).[7] In a thorough opinion, the District Court granted summary

---

[2] *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010).
[3] *Id.*; *see* Fed. R. Civ. P. 56.
[4] 42 U.S.C. § 2000 *et seq.*
[5] N.J. Stat. Ann. § 10:5-1 *et seq.*
[6] 29 U.S.C. § 2601 *et seq.*
[7] N.J. Stat. Ann. § 34:11b-1 *et seq.*

judgment in favor of Crest Haven on each of these claims, and D'Ambrosio now appeals.[8] We address each of her claims in turn and, for the reasons stated below, will affirm the judgment of the District Court.

## A. Title VII

Count I of D'Ambrosio's complaint alleges three violations of Title VII, based on racial discrimination. Specifically, she argues that each of the following acts constituted unlawful discrimination: (1) her demotion from Admissions Director to Admissions Clerk, (2) her reassignment to the Ward Clerk position after her return from medical leave, and (3) the denial of her application for the Scheduling Coordinator and Finance Director positions. The District Court granted summary judgment because it concluded that D'Ambrosio had failed to plead a prima facie case of discrimination as to each of these claims.

We evaluate Title VII racial discrimination claims under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[9] Under this framework, a plaintiff bears the initial burden of establishing a prima facie case of racial discrimination.[10] The elements of a prima facie case are that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the

---

[8] In addition to her claims under Title VII, the NJLAD, the FMLA, and the NJFLA, D'Ambrosio also brought claims under 42 U.S.C. §§ 1981 and 1983 and the New Jersey Civil Rights Act (NJCRA). D'Ambrosio voluntarily withdrew her NJCRA claim in response to Crest Haven's motion for summary judgment. The District Court granted summary judgment in favor of Crest Haven on D'Ambrosio's § 1981 and § 1983 claims, and D'Ambrosio does not challenge that ruling on appeal.

[9] 411 U.S. 792, 802-03 (1973).

[10] *Id*. at 802.

position, (3) the plaintiff suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.[11]  If a plaintiff can establish a prima facie case, then the burden shifts to the employer, who must "articulate some legitimate, nondiscriminatory reason" for the employment decision at issue.[12]  Finally, if the employer can articulate such a reason, the burden shifts back to the plaintiff to show that the reason was pretextual.[13]  The District Court correctly applied this framework and considered whether each of the acts described above satisfied the elements of a prima facie case of racial discrimination.  We now do the same.

As to the first act—D'Ambrosio's "demotion" from Admissions Director to Admissions Clerk—the District Court correctly concluded that D'Ambrosio had not established that she was qualified for the position, the second element of a prima facie case.  The record indisputably supports this conclusion; in D'Ambrosio's own words, she was "overwhelmed" and could not handle the job.  D'Ambrosio's attempt to characterize her demotion as the result of Thornton's subjective assessment is unavailing.  It is difficult to imagine stronger objective evidence that an employee is not qualified for a position than the employee's own statement that she cannot handle her job responsibilities.[14]

---

[11] *See e.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).
[12] *McDonnell Douglas*, 411 U.S. at 802.
[13]  *See Jones*, 198 F.3d at 410.
[14] Because we find that D'Ambrosio failed to establish the second element of a prima facie case of racial discrimination, we need not address the District Court's conclusion

As for D'Ambrosio's discrimination claim based on her reassignment to the Ward Clerk position, following her return from medical leave, there is no objective evidence in the record to support D'Ambrosio's contention that her assignment to the Ward Clerk position was a "demotion" or that the position was in any way inferior. On the contrary, the record indicates that the Ward Clerk position was comparable to other positions, and it is uncontested that D'Ambrosio continued to retain her Civil Service Title, salary, and benefits. Thus, D'Ambrosio failed to establish that the reassignment constituted an adverse employment action. In addition, Crest Haven had a legitimate, nondiscriminatory reason for assigning D'Ambrosio to the Ward Clerk position: County regulations required that the Ward Clerk position be filled. Nor has D'Ambrosio shown that that reason was a pretext.

Finally, as for D'Ambrosio's discrimination claims stemming from her failure to be selected for the Scheduling Coordinator and Finance Director positions, based on the evidence in the record, the District Court correctly concluded that Crest Haven had a legitimate, nondiscriminatory reason for selecting other employees for those positions. The employee selected for the Scheduling Coordinator position had been filling in for another scheduler for several months, and thus had relevant experience. The primary distinguishing criterion relied upon by D'Ambrosio—her bachelor's degree—was not relevant to the job qualifications of the Scheduling Coordinator. Similarly, D'Ambrosio had no work experience or educational background in finance, but nevertheless relies

that the removal of D'Ambrosio's supervisory duties, without any change to her pay or Civil Service title, constituted an adverse employment action.

9

upon her academic degrees to assert that she was better qualified for the Finance Director position than an employee with prior experience in the Finance Department. Ultimately, as the District Court noted, D'Ambrosio offers no support, other than her bachelor's degree,[15] for her contention that she was the most qualified employee for the Scheduling Coordinator and Finance Director positions.

In addition to her discrimination claims, D'Ambrosio also alleges that her denial of the Scheduling Coordinator and Finance Director positions constituted retaliation in response to her initial EEOC complaint, in violation of Title VII. Title VII retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework.[16] In order to establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."[17] The Supreme Court has clarified that the third element of a Title VII retaliation claim requires but-for causation.[18] D'Ambrosio has failed to establish the third element of her retaliation claims for much the same reason her discrimination claims failed. In order to satisfy the requirement of but-for causation, D'Ambrosio needed to present evidence showing that, but for her filing

---

[15] At times, D'Ambrosio has also pointed to her master's degree as further evidence of her superior qualifications. But the record is clear that D'Ambrosio had not yet completed this degree when she applied for the positions in question.
[16] *See, e.g.*, *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (requiring Plaintiff to first establish a prima facie case of retaliation under Title VII).
[17] *Id*. (internal quotation marks omitted).
[18] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . ..").

of the EEOC charge, she would have been hired for the Scheduling Coordinator or Finance Director positions. As described above, there is ample evidence in the record indicating that D'Ambrosio was not selected for those positions because other applicants were more qualified.[19]

### B. FMLA

Count VI of D'Ambrosio's complaint alleges interference and retaliation in violation of the FMLA. Under the FMLA, an employee is entitled to take work leave, and, upon return, "the employee is entitled to be reinstated to his or her former position, or an equivalent one."[20] The elements of an FMLA interference claim are that (1) the employee was entitled to benefits under the FMLA, and (2) the employee was denied those benefits.[21] We analyze FMLA retaliation claims under the *McDonnell Douglass* framework.[22] To establish a prima facie FMLA retaliation claim, a plaintiff must show that: (1) she invoked her right to FMLA benefits; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the employee's invocation of her FMLA rights.[23]

In arguing that the District Court erred by granting summary judgment on her FMLA claims, D'Ambrosio simply refers to her arguments in support of her Title VII

[19] As the District Court correctly observed, "[d]iscrimination and retaliation claims under the NJLAD are analyzed according to the same *McDonnell Douglas* burden-shifting framework applied to Title VII claims. *See also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 493 (3d Cir. 1999). For the reasons stated above, summary judgment was also warranted on D'Ambrosio's NJLAD claims.

[20] *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004).

[21] *See Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006).

[22] *See Lichtenstein v. Univ. of Pitt. Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

[23] *See Conoshenti*, 364 F.3d at 146.

11

claims.[24]  Thus, we conclude that D'Ambrosio's FMLA claims fail for many of the same reasons as her Title VII claims.  As an initial matter, there is no dispute that D'Ambrosio took the medical leave that she requested.  Upon her return she not only remained employed at Crest Haven but also retained her Civil Service Title, salary, and benefits.  On appeal, D'Ambrosio concedes that the District Court did not err in its determination that, upon her return from leave, she was no longer qualified for the External Case Manager position.  The gravamen of D'Ambrosio's FMLA argument appears to be that her assignment to the Ward Clerk position, which she viewed as inferior, and the subsequent denial of her applications for the Scheduling Coordinator and Finance Director positions constituted retaliation for exercising her right to take medical leave.  But, as noted in Section III.A, D'Ambrosio's assignment to the Ward Clerk position was not an adverse employment action, and there is no basis in the record to conclude that D'Ambrosio was denied the Scheduling Coordinator and Finance Director positions for any reason besides the fact that other applicants were better qualified.[25]

## IV.  Conclusion

For the above stated reasons, we will affirm the District Court's grant of summary judgment in favor of Crest Haven.

---

[24] *See* Appellant's Br. at 30.

[25] As with the NJLAD, our analysis of NJFLA claims tracks the statute's federal analogue, here the FMLA.  *Cf., e.g., Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 501-12 (3d Cir. 1996) (incorporating federal standards in analysis of NJLAD and NJFLA claims).