*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JEFF MOODY, | ) | |
| | ) | Supreme Court No. S-14864/14883 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-08-07621 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ROYAL WOLF LODGE, | ) | No. 6966 – November 14, 2014 |
| LINDA BRANHAM, and | ) | |
| CHRIS BRANHAM, | ) | |
| | ) | |
| Appellees and | ) | |
| Cross-Appellants. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Stephanie E. Joannides, Judge.

Appearances: Kenneth W. Legacki, Anchorage, for Appellant and Cross-Appellee. William M. Bankston and John R. Crone, Bankston Gronning O'Hara, P.C., Anchorage, for Appellees and Cross-Appellants.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.  INTRODUCTION

A pilot who worked at a remote fishing lodge filed a claim under the Alaska Wage and Hour Act (AWHA) for unpaid overtime wages. Applying the four-part test

of *Dayhoff v. Temsco Helicopters, Inc.*,[1] the superior court concluded that the pilot was a "professional employee" who was exempt from the overtime requirement. But the legislature amended AWHA in 2005 to adopt the federal definition of this exemption.[2] The federal definition restricts the exemption to employees in "professions where specialized academic training is a standard prerequisite."[3] Applying this definition, we conclude that the pilot was not exempt under AWHA and reverse.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Chris and Linda Branham own and operate the Royal Wolf Lodge, a fishing lodge that operates seasonally from June to September. The lodge is located in Katmai National Park, a remote location without access to roads. Employees reside on the premises during the season, and all materials must be flown in by airplane. The lodge first hired Jeff Moody as a pilot for the 2002 summer season and terminated him after the 2007 season.

Moody was the only pilot who flew the lodge's de Havilland Beaver aircraft. The parties contest the details of Moody's responsibilities at the lodge, but they agree that Moody was responsible for many tasks involving the airplane. For example, Moody flew clients between the lodge and the fishing destinations, prepared and cleaned the airplane, and monitored it for potential mechanical problems. He also flew food, fuel, and other supplies to the lodge. When he was not on duty, Moody was allowed to engage in personal errands and leisure activities.

---

[1]    848 P.2d 1367, 1371 (Alaska 1993).

[2]    Ch. 90, § 2, SLA 2005.

[3]    29 C.F.R. § 541.301(d) (2014).

Although Moody does not have a college degree and did not receive flight training in a formal academic setting, he hired flight instructors to teach him, and he studied from manuals to take the Federal Aviation Administration's (FAA) oral and written tests. Moody holds a commercial pilot license, an airline transport pilot license, a certified flight instructor rating, an instrument rating, a multi-engine rating, a single engine land rating, a single engine sea rating, and a second class medical certificate. His experience includes over 14,000 hours of flight time.

**B.     Proceedings**

Moody filed a complaint against Chris Branham, Linda Branham, and the Royal Wolf Lodge (together "Royal Wolf Lodge") for unpaid overtime wages from the 2006 and 2007 seasons. Moody had a written employment agreement for those seasons, and he was paid $9,500 per month in 2006 and $9,750 per month in 2007. Moody claimed that he had worked more than eight hours per day and more than 40 hours per week and that he was therefore entitled to overtime pay under AWHA. Royal Wolf Lodge contended that Moody was a professional employee and was thus exempt from AWHA's protections.

At trial, Royal Wolf Lodge presented evidence that Moody was paid a set monthly salary equivalent to 40 hours regular pay and 32 hours overtime pay per week. But some of Royal Wolf Lodge's evidence was inconsistent. Chris Branham testified that Moody's salary was for a 30-day period, but he also testified that Moody was paid by calendar month. Moody's employment contract specified that his salary was based on 30 days per month, but it listed hourly rates inconsistent with Chris Branham's testimony. The parties also disagreed about whether Moody worked overtime hours.

Applying the four-part test of *Dayhoff v. Temsco Helicopters, Inc.*,[4] the superior court ruled that Moody was an exempt professional employee who was not entitled to overtime pay under AWHA, regardless of the number of hours he worked. But the court determined that, by the terms of his employment contract, Moody was entitled to extra pay if he worked more than 30 days per calendar month or more than six days per week. The court found that Moody worked every day during the 2006 and 2007 seasons and awarded him unpaid wages for the 31st days of July and August for both seasons as well as for the extra day per week he worked.

Both sides moved to adjust the award. Royal Wolf Lodge sought attorney's fees under Alaska Civil Rules 68 and 82. Moody opposed this motion, arguing that he was the prevailing party and that, under AS 23.10.110(f), a defendant cannot be awarded attorney's fees when a plaintiff litigates his AWHA claim in good faith. Moody also reiterated his claim that Royal Wolf Lodge had violated AWHA and argued that he was entitled to mandatory liquidated damages and attorney's fees under AS 23.10.110(a) and (c). He further claimed that he was entitled to receive an additional penalty payment from Royal Wolf Lodge under AS 23.10.140.[5]

The superior court determined that Moody was the prevailing party and that Royal Wolf Lodge was not entitled to an award of attorney's fees. But the court, noting its previous conclusion that Moody was exempt from AWHA, also rejected Moody's argument for a larger award under AS 23.10.110. And the court rejected Moody's argument for a penalty payment under AS 23.05.140 based on its findings that Moody's right to overtime compensation was unsettled when he left Royal Wolf Lodge and that

---

[4]     848 P.2d at 1371.

[5]     It appears Moody intended to cite AS 23.05.140, which provides the penalty award he claimed. AS 23.10.140 penalizes employers for AWHA violations but does not benefit employees.

Royal Wolf Lodge had not intentionally withheld compensation from him. The superior court issued a final judgment for Moody in the principal amount of $12,833.40. Moody subsequently moved for attorney's fees under Civil Rule 82, which the superior court granted.

Moody appeals the decision denying his AWHA claim. Royal Wolf Lodge cross-appeals the contract damages and attorney's fees awards.

## III.  STANDARD OF REVIEW

Whether an employee is an exempt professional under AWHA is a question of fact.[6] "We review factual findings for clear error, and will uphold the superior court's findings unless we are left with a definite and firm conviction on the entire record that a mistake has been made . . . ."[7] However, the interpretation of the controlling statutes and regulations is a legal question which we review de novo.[8] "Whether the superior court violated a party's due process rights is [also] a question of law, which we review de novo."[9]

---

[6]    *See Era Aviation, Inc. v. Lindfors*, 17 P.3d 40, 50-51 (Alaska 2000).

[7]    *Simmonds v. Parks*, 329 P.3d 995, 1007 (Alaska 2014) (quoting *John v. Baker*, 30 P.3d 68, 71 (Alaska 2001)) (internal quotation marks omitted).

[8]    *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240, 244 (2004) (citing *Therchik v. Grant Aviation, Inc.*, 74 P.3d 191, 193 (Alaska 2003)).

[9]    *McCarrey v. Kaylor*, 301 P.3d 559, 563 (Alaska 2013) (citing *A.M. v. State*, 945 P.2d 296, 302 (Alaska 1997)).

## IV. DISCUSSION

### A. Federal Law Now Governs AWHA's Definition Of "Professional Employee."

AWHA requires an employer to pay overtime compensation "at the rate of one and one-half times the regular rate of pay" for hours worked in excess of eight hours per day or 40 hours per week.[10] But this requirement does not apply to the employer of "an individual . . . employed in a bona fide executive, administrative, or professional capacity."[11]

In *Dayhoff v. Temsco Helicopters, Inc.* we adopted a four-part test to determine whether an employee was a "professional employee."[12] Under *Dayhoff*, an employee was considered an exempt professional if "1) the employee's primary duty is to perform work requiring knowledge of advanced type, 2) the work requires consistent exercise of discretion, 3) the work [is] predominantly intellectual and varied, and 4) the work [is] compensated on a fee basis."[13] These factors were based on the definition of "professional employee" then found in the Alaska Administrative Code.[14]

In 2005, however, the Alaska Legislature amended AWHA to adopt the federal definition of "professional employee."[15] The federal definition itself had been

---

[10] AS 23.10.060(b).

[11] AS 23.10.055(a)(9)(A).

[12] 848 P.2d 1367, 1371 (Alaska 1993).

[13] *Id*.

[14] *Id*. (citing 8 Alaska Administrative Code (AAC) 15.910(a)(11) (1993)).

[15] Ch. 90, § 2, SLA 2005 (adding subsection (c) to AS 23.10.055 and explaining that " 'bona fide executive, administrative, or professional capacity' has the meaning and shall be interpreted in accordance with 29 U.S.C. 201-219 (Fair Labor

(continued...)

amended in 2004, and the 2004 amendments provide additional interpretive guidance, even for the parts of the definition that appear facially similar to the *Dayhoff* factors.[16] However, the amended federal regulation differs significantly from the first *Dayhoff* factor. While the regulation defines a professional employee as one whose "primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning," it clarifies that this knowledge must be "customarily acquired by a prolonged course of specialized intellectual instruction."[17]

Most importantly for this case, the federal regulation provides a detailed explanation of the phrase "customarily acquired by a prolonged course of specialized intellectual instruction":

> The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" *restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession*. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but

---

**[15]** (...continued)
Standards Act of 1938), as amended, or the regulations adopted under those sections.").

**[16]** *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,265-66 (Apr. 23, 2004). Like the second *Dayhoff* factor, the work must include tasks "requiring the consistent exercise of discretion and judgment." 29 C.F.R. § 541.301(b) (2014). Like the third *Dayhoff* factor, the work must be "predominantly intellectual in character." *Id.* And like the fourth *Dayhoff* factor, the employee must be "[c]ompensated on a salary or fee basis." 29 C.F.R. § 541.300 (2014).

**[17]** 29 C.F.R. § 541.300(a)(2).

who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.[18]

This definition of "work . . . [r]equiring knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction" is narrower than the definition we used in *Era Aviation, Inc. v. Lindfors*, where we upheld a jury's finding that a commercial airline pilot was an exempt professional based on her "hundreds of hours of training" and flying time.[19] As the 2004 regulatory amendment makes clear, the professional exemption is "restrict[ed] . . . to professions where specialized *academic* training is a standard prerequisite for entrance into the profession."[20]

---

[18]    29 C.F.R. § 541.301(d).

[19]    17 P.3d 40, 50-51 (Alaska 2000).

[20]    29 C.F.R. § 541.301(d) (emphasis added). In contrast, the pre-2004 regulation was less definite, stating that "the word 'customarily' *implies* that in the *vast majority of cases* . . . specific academic training is a prerequisite for entrance into the field." 29 C.F.R. § 541.301(d) (2003) (emphasis added).

Because the federal definition of "professional employee" differs from the state regulation that informed our *Dayhoff* analysis, the four-part *Dayhoff* test no longer controls whether an employee is an exempt professional under AWHA. Instead, trial courts should look to 29 C.F.R. §§ 541.300 and .301 in making this determination. Specifically, they should apply the "primary duty test" of §§ 541.300 and .301, paying special attention to the clarifications provided by § 541.301(b) through (f).

In this case, the superior court correctly recognized that Alaska now relies on 29 C.F.R. §§ 541.300 and .301 to determine whether the professional exemption applies to an AWHA claim. But the court incorrectly paraphrased § 541.301(d) as follows:

> The requirement that the knowledge be customarily acquired through prolonged specialized instruction generally restricts the exemption to fields where specialized academic training is a prerequisite. *However, the word "customarily" broadens the exemption such that it may also apply to professions that have "substantially the same knowledge level and perform substantially the same work as the degreed employees*, but who attained the advanced knowledge through a combination of work experience and intellectual instruction."[21]

Using this formulation and continuing to apply the *Dayhoff* factors, the superior court concluded that the required credentials of a lodge pilot like Moody were similar to the credentials of pilots in cases where those pilots have been found to be exempt.[22]

But all of these cases preceded the amendment to 29 C.F.R. § 541.301 in 2004. And contrary to the superior court's determination, the word "customarily" in the

---

[21] Emphasis added and citations omitted.

[22] *See Era Aviation, Inc. v. Lindfors*, 17 P.3d 40 (Alaska 2000); *Paul v. Petroleum Equip. Tools Co.*, 708 F.2d 168 (5th Cir. 1983); *Kitty Hawk Air Cargo, Inc. v. Chao*, 304 F. Supp. 2d 897 (N.D. Tex. 2004).

primary duty test does not broaden the exemption to include entire *professions* where advanced training — but not academic or intellectual instruction — is required. Instead, "customarily" broadens the exemption only to individual *employees* who lack specialized academic training but nevertheless work in professions where such training is "a standard prerequisite for entrance into the profession."[23] The regulation provides as examples "the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry."[24] Both examples involve professions in which specialized academic instruction is generally required. Incorrectly paraphrasing § 541.301(d) led to the application of the wrong legal standard.

Since the 2004 amendment of 29 C.F.R. § 541.301(d), every federal court considering whether pilots fall within the professional exemption has concluded that they do not, because commercial piloting does not require specialized academic training as a standard prerequisite.[25] In *Pignataro v. Port Authority*, the Third Circuit Court of Appeals upheld a trial court's determination that helicopter pilots did not qualify for the professional exemption under the Fair Labor Standards Act.[26] The appellate court

---

[23]     29 C.F.R. § 541.301(d) (2014).

[24]     *Id.*

[25]     *Pignataro v. Port Auth.*, 593 F.3d 265, 269-71 (3d Cir. 2010); *McCoy v. N. Slope Borough*, Docket No. 3:13-CV-00064-SLG, 2013 WL 4510780, at *1, 6-8 (D. Alaska Aug. 26, 2013); *Howard v. Port Auth.*, 684 F. Supp. 2d 409, 415 (S.D.N.Y. 2010). The Second Circuit recently commented in dicta that "even experienced professionals, from airline pilots to surgeons, utilize checklists and standardized protocols." *Pippins v. KPMG, LLP*, 759 F.3d 235, 247 n.4 (2d Cir. 2014). But the issue of whether pilots were professional employees under §§ 541.300 and .301 was not before the appellate court.

[26]     593 F.3d at 269-71 (alteration in original) (citations omitted) (internal quotation marks omitted).

acknowledged the significant credentials required to become a Port Authority helicopter pilot: 2,000 hours of flying time, a commercial helicopter pilot certificate, a second class medical certificate, knowledge of the FAA's rules and regulations, and a high school diploma or GED.[27] But critically, none of those credentials involved the attainment of an advanced academic degree — the "pilots' knowledge and skills were acquired through experience and supervised training as opposed to intellectual, academic instruction."[28] For this reason, the court concluded that the pilots were "not 'learned professionals' and . . . not exempt from the provisions of the [Fair Labor Standards Act]."[29]

In *Howard v. Port Authority*, which also involved Port Authority helicopter pilots, the federal district court adopted *Pignataro*'s reasoning and found that "Port Authority helicopter pilots obtain the required advanced knowledge primarily through experience rather than academic study."[30]

And in *McCoy v. North Slope Borough*, the federal district court determined that North Slope Borough search and rescue pilots are not exempt professionals.[31] Much like the helicopter pilots in *Pignataro*, the pilots in *McCoy* were required to have extensive credentials, including an airline transport license, a first class medical certificate, and 3,000 hours of flight time (including 500 hours in remote or arctic

---

[27]     *Id.* at 269.

[28]     *Id.* at 270.

[29]     *Id.*

[30]     684 F. Supp. 2d at 415.

[31]     Docket No. 3:13-CV-00064-SLG, 2013 WL 4510780, at *1, 6-8 (D. Alaska Aug. 26, 2013).

areas).[32]  But while the pilots' training was both specialized and prolonged, it was "not a course of specialized *intellectual* instruction akin to an academic degree."[33]

The United States Department of Labor, which promulgated 29 C.F.R. §§ 541.300 and .301, also takes the position that pilots are not professional employees.  As early as 1975, the Department concluded that aviation is not "work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study."[34]  The Department maintained this position in its comments accompanying the amendment to § 541.301 in 2004.[35]  And it reiterated this view in a 2009 Wage and Hour Opinion Letter sent to an employer of pilots holding airline transport and commercial licenses.[36]

We agree with the analysis in *Pignataro*, *Howard*, and *McCoy*.  Under the primary duty test of 29 C.F.R. §§ 541.300 and .301, Moody is not eligible for AWHA's professional exemption.  We acknowledge the superior court's findings that Royal Wolf Lodge requires its pilots to have commercial pilot licenses, to comply with the requirements of 14 C.F.R. §§ 135.61-.129, and to pass written and oral tests demonstrating their knowledge of FAA rules.  And we note Chris Branham's assertion

---

[32]     *Id.* at *1.

[33]     *Id.* at *8 (emphasis in original).

[34]     Dep't of Labor Wage and Hour Opinion Letter WH-303 (Jan. 20, 1975) (internal quotation marks omitted).

[35]     Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,156 (Apr. 23, 2004) (noting also that pilots employed by commercial airlines are exempt from overtime under a different section of the Fair Labor Standards Act).

[36]     Dep't of Labor Wage and Hour Opinion Letter FLSA 2009-6 (Jan. 14, 2009).

that he would only consider hiring pilots with at least 1,500 hours of total flying time. But none of these requirements involves "specialized intellectual instruction" as required by the federal regulations.

It is true that Moody had additional credentials and experience that exceeded Royal Wolf Lodge's hiring requirements. But the relevant determination is not whether Moody personally acquired specialized intellectual instruction, but whether that instruction is a *standard* prerequisite for entrance into the aviation profession. The record in this case shows that piloting — even commercial piloting — does not generally require academic training. Therefore we cannot say that the "primary duty" of a pilot such as Moody requires "knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction."[37]

Because Moody was not an exempt employee under AWHA, we remand for further proceedings on whether Moody in fact worked overtime as defined by AS 23.10.060 and whether he is entitled to recover compensation for unpaid overtime.[38]

B.     The Superior Court's Determination That Moody Took No Days Off And Was Entitled To Contract Damages Was Not Clearly Erroneous.

Although the superior court rejected Moody's AWHA claim, it nevertheless awarded him contract damages. After reviewing extensive oral testimony from witnesses and documentary evidence from both sides, the superior court found:

> The 2006 and 2007 contracts, when considered together and
> in relation to the 2005 contract, provide guidance as to the
> intent of the parties. The intent of the parties was that Moody

---

[37]     29 C.F.R. § 541.300(a)(2) (2014).

[38]     Royal Wolf Lodge claims the superior court found that Moody never worked more than 40 hours per week. But the superior court merely disclaimed a factual finding on the issue, stating, "I did not find that Moody actually worked over 40 hours a week." We conclude that this issue remains unresolved.

would be paid an agreed upon sum per month for a 30 day period and that his contract did not contemplate any overtime for any work done in that 30 day period. . . .

But the court also noted that the 2006 and 2007 contracts stated that "[o]ne day off a week is provided, or accumulated for time off" and that Moody's salary was "based on 30 days per month; or pro rated per day." Relying on Moody's work records, which the court found to be more credible than Royal Wolf Lodge's documents, the superior court determined that Moody took no days off during the 2006 and 2007 seasons. As a result, it awarded him contract damages for his unpaid work on the 31st days of July and August and on the seventh day of each week of both seasons.

Royal Wolf Lodge does not challenge the court's interpretation of Moody's employment contracts, but it argues that the superior court clearly erred in finding Moody took no days off during the 2006 and 2007 seasons.[39]

First, Royal Wolf Lodge cites its employees' testimony that Moody did not work over 40 hours per week and that he did not contribute to tasks other than piloting and maintaining his aircraft. But this testimony concerns only the total number of hours Moody worked each week and whether he engaged in general maintenance work at the lodge. It provides no insight into which days Moody worked.

Second, Royal Wolf Lodge argues that the superior court gave insufficient consideration to Chris Branham's *post-decision* affidavit, which attested that there were "days [Moody] did not fly at all." But this untimely affidavit was submitted more than five months after the superior court's decision. Because Royal Wolf Lodge did not

_____

[39] While Royal Wolf Lodge argues in its briefing that Moody took "days" off in 2006 and 2007, it conceded at oral argument that, with the exception of June 26, 2006, Moody worked every disputed day.

submit this affidavit in conjunction with an Alaska Civil Rule 60(b) claim,[40] the superior court was under no obligation to consider this new evidence after it issued its decision. We decline to credit the document now.

Finally, Royal Wolf Lodge points to Moody's testimony that he flew zero hours on June 26, 2006. But in his testimony, Moody did not admit taking the day off; he merely acknowledged that his work that day did not involve flying. Moody further testified that he worked 11 hours on June 26. Even Royal Wolf Lodge's log records, while contradicting Moody's claim as to the number of hours, state that he worked two hours that day.

For these reasons, we find no clear error in the superior court's finding that Moody worked every day during the 2006 and 2007 seasons. We affirm the superior court's award of contract damages.[41]

### C. The Superior Court Did Not Violate Royal Wolf Lodge's Due Process Rights When It Determined That Moody Was Entitled To Contract Damages.

Royal Wolf Lodge argues it did not receive adequate notice that the superior court could award contract damages because Moody pled his overtime claim solely under AWHA.

A trial court violates due process if it does not provide a party with adequate notice and an opportunity to be heard on the claims addressed by the court's

---

[40] The affidavit was attached to a post-judgment brief concerning attorney's fees.

[41] If on remand the superior court determines that Moody is entitled to damages under AWHA, the court may need to reconsider whether contract damages remain appropriate given the possibility of a double recovery.

decision.[42]  "[T]he due process analysis is a flexible and contextual one focusing on the interest and not the outcome, [but] there must be some actual prejudice . . . and not merely the 'theoretical possibility of prejudice.' "[43]  Therefore, "[a] the party raising a due process objection must show that it has suffered actual prejudice, even in a case where the notice is clearly inadequate.[44]

Although Moody pled no contract claims in his complaint, Royal Wolf Lodge put Moody's employment contracts at issue by raising their interpretation and application as a defense against Moody's AWHA claim.  Moreover, at oral argument before this court, Royal Wolf Lodge conceded it would not have litigated the case any differently had it received prior notice that Moody could be awarded contract damages.  Royal Wolf Lodge thus did not suffer any prejudice from the court's decision to award Moody contract damages, and we conclude that the superior court's decision did not violate due process.

## V.    CONCLUSION

We REVERSE the determination that Moody was an exempt professional employee under AWHA and REMAND for further proceedings.  We VACATE the

---

[42]     *Price v. Eastham*, 75 P.3d 1051, 1056 (Alaska 2003); *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983) (reversing a custody decision because the parties were not given adequate notice that the court would make a final custody award after an interim custody hearing).

[43]     *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 433 (Alaska 2012) (citations omitted) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000)).

[44]     See *id.* (applying *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).

superior court's orders declaring Moody to be the prevailing party and awarding him attorney's fees.[45]  We AFFIRM the superior court's decision on all remaining issues.

---

[45]     Because the merits of Moody's AWHA claim remain unresolved, we need not reach these issues.