*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JEFF MOODY, | ) | |
| | ) | Supreme Court Nos. S-16713/16733 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-08-07621 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ROYAL WOLF LODGE, LINDA | ) | No. 7322 – December 14, 2018 |
| BRANHAM, and CHRIS BRANHAM, | ) | |
| | ) | |
| Appellees and | ) | |
| Cross-Appellants. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Kenneth W. Legacki, Anchorage, for Appellant/Cross-Appellee. William M. Bankston and Renee J. Sheyko, Bankston Gronning O'Hara, P.C., Anchorage, for Appellees/Cross-Appellants.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

This appeal involves a pilot's claim for unpaid overtime compensation. The superior court concluded after a bench trial that the pilot, who flew seasonally for a

remote wilderness lodge, was a professional employee and therefore subject to an exemption from the overtime requirements of the Alaska Wage and Hour Act (AWHA). We reversed that decision on appeal, holding that the pilot was not exempt, and remanded the case for a determination of the overtime hours actually worked.[1]

On remand the superior court framed the issue as whether the pilot, during his time at the lodge, was "engaged to wait or waiting to be engaged." The superior court applied a multi-factor test and found that the pilot was "waiting to be engaged" and therefore was not entitled to overtime compensation for hours other than those he spent actually performing duties for his employer. The court found that the pilot had worked 6.4 hours of unpaid overtime but declined to award liquidated damages, finding that an exception to the liquidated damages statute applied because the lodge had acted reasonably and in good faith. The court also declined to award attorney's fees to the lodge despite the fact that it had bettered the terms of several offers of judgment.

Both parties appeal. We conclude that the superior court did not err in its legal analysis when determining whether the pilot was entitled to overtime compensation. We also affirm the superior court's decision not to award attorney's fees to the employer. But because the superior court made no findings about the lodge's subjective good faith, we remand the liquidated damages issue to the superior court for further consideration of whether the good-faith exception applies.

## II. FACTS AND PROCEEDINGS

### A. Facts

Linda and Chris Branham owned and operated Royal Wolf Lodge, a fishing

---

[1] *Moody v. Royal Wolf Lodge*, 339 P.3d 636, 642 (Alaska 2014) (*Moody I*).

lodge in Katmai National Park that operated seasonally from June to late September.²
Employees lived there for the season, and because the lodge had no road access they
depended on aircraft for materials and supplies.³

Royal Wolf Lodge employed Jeff Moody as a pilot for six seasons, from
2002 through 2007, to fly the lodge's de Havilland Beaver aircraft.⁴  A separate
employment agreement covered each year.  In January 2008 the Branhams sent Moody
a letter informing him that he would not be rehired for the 2008 season.

B.     Proceedings

1.     Trial before Judge Joannides and *Moody I*

Moody filed a complaint against the Branhams and Royal Wolf Lodge in
May 2008, seeking damages under AWHA for unpaid overtime compensation and
liquidated damages in an equal amount.  Superior Court Judge Stephanie E. Joannides
issued a decision in June 2011 following a bench trial, making specific findings about
Moody's job responsibilities and his other activities while at the lodge.  She found that
Moody was "responsible for preparing the plane for flights," properly loading and
unloading it, flying guests to and from the lodge for fishing, and flying in "supplies and
other materials," and that he sometimes volunteered for other duties around the lodge.
She also found, however, that the time he spent on tasks "not directly related to" his
duties as a pilot "comprised only a small percentage of his time."  She found that
between flights Moody "was able to visit with other employees and guests while eating,
use the internet, watch movies, do laundry, stay in his room, and take naps," though she
recognized that the lodge's remote location meant he had to stay nearby.

---

²     *Id.* at 637.

³     *Id.*

⁴     *Id.*

A determinative issue was whether Moody was a professional employee exempt from AWHA's overtime requirements.[5] Judge Joannides decided he was and therefore was not entitled to overtime compensation. She found that he was, however, entitled to contract damages because his agreed salary was based on a 30-day month and one day off per week, and it was uncontested that he did not take days off in 2006 or 2007. While awarding no overtime, Judge Joannides awarded Moody unpaid wages for July 31 and August 31 of 2006 and 2007 and for the extra day he worked every week.

In *Moody I* we reversed Judge Joannides's determination that Moody fell under the professional employee exemption.[6] We followed United States Department of Labor advice and federal cases holding that airline pilots do not meet the definition of "professional employees" for the purpose of the exemption because their "primary duty" — piloting an aircraft — does not require specialized academic training.[7] But we affirmed Judge Joannides's factual findings about the days Moody worked and his entitlement to contract damages.[8] We remanded the case "for further proceedings on whether Moody in fact worked overtime as defined by AS 23.10.060 and whether he is entitled to recover compensation for unpaid overtime."[9]

### 2. Remand proceedings before Judge Marston

The case on remand was assigned to Superior Court Judge Erin B. Marston. Following a four-day bench trial in May 2016, Judge Marston issued a written decision,

---

[5]     *Id.* at 637-38.

[6]     *Id.* at 639-42.

[7]     *Id.* at 641-42.

[8]     *Id.* at 642-43.

[9]     *Id.* at 642.

finding that Moody had worked a total of 6.4 hours of uncompensated overtime. To reach this conclusion the judge first had to determine whether Moody was "engaged to wait" — i.e., was entitled to pay while waiting for the lodge to call for his services — or was "waiting to be engaged" — i.e., was on his own time and not entitled to pay until called. Judge Marston noted that "parties are permitted to agree on what constitutes work hours in situations where an employee lives on the work site." He determined, however, that the contracts at issue were "unclear and inconsistent" and reflected "no meeting of the minds" as to job requirements, number of work hours, or hourly rate. Therefore, in order "[t]o determine whether Mr. Moody was engaged to wait, the court must determine whether he was permitted to use his time for his own purposes."

Judge Marston reviewed the factors set out in *Owens v. Local No. 169, Association of Western Pulp & Paper Workers*,[10] for determining whether an employee is free to engage in personal activities, and found that Moody's job responsibilities left him "free to do whatever he decided to do for much of the day." The judge found that "none of the employment agreements between the parties contemplated on[-]call or standby time[,] . . . there were no policies, written or otherwise, that required any of the pilots to be on call[,] . . . [and] [t]he 2007 employment agreement specifically states there is no on[-]call or standby time." He concluded that because the parties had not agreed to standby or on-call time, and because "in practice Mr. Moody was free to use his non[-]flying time for his own purposes, he was not engaged to wait, but rather was waiting to be engaged."

---

[10]     971 F.2d 347, 350-51 (9th Cir. 1992), *recognized in Air Logistics of Alaska, Inc. v. Throop*, 181 P.3d 1084, 1091 (Alaska 2008); *see also Hutka v. Sisters of Providence in Wash.*, 102 P.3d 947, 958-59 (Alaska 2004) (citing *Owens*, 971 F.2d at 350) (noting that one factor to consider in determining whether on-call time is compensable as overtime is employee's freedom to engage in personal activities).

Judge Marston next determined the number of hours Moody actually worked. Finding the employment agreements unhelpful because of their inconsistencies and ambiguities, the judge found "Moody's log books to be the most accurate primary source," as they "were kept contemporaneously and have indicia of reliability." Judge Marston determined how many flight hours Moody logged in 2006 and 2007 and added some time for related duties, "such as preparing and preflighting the airplane, loading and unloading passengers, loading and unloading cargo[,] and making supply runs and errand runs." He concluded that "[t]o exceed eight hours in a day, [Moody] would have to have flown at least five and a half hours." Extrapolating from calendars that in turn collected information from Moody's flight logs and Chris Branham's summaries of work hours, Judge Marston concluded that "Moody worked overtime hours in 2006 in the amount of 5.4 hours . . . [and] one hour of overtime in 2007."

Judge Marston then decided that liquidated damages under AS 23.10.110(a) were not appropriate because of the statute's exception for employers who have acted reasonably and in good faith.[11]

Royal Wolf Lodge moved for an award of costs and attorney's fees, citing AS 23.10.110(f), which allows the court "in an action for unpaid overtime compensation" to award attorney's fees to a prevailing defendant who has "made an offer of judgment to the plaintiff, . . . unless the plaintiff proves to the satisfaction of the court that the action was both brought and prosecuted in good faith and that the plaintiff had reasonable grounds for believing that the act or omission was in violation of [AWHA]." Judge Marston denied the attorney's fees motion, finding that Moody had "pursued his legal claim on remand in good faith," but he awarded Royal Wolf Lodge its costs

---

[11]    AS 23.10.110(d).

because such an award was mandated by Alaska Civil Rule 68 and not precluded by AWHA.

Both parties appealed. Moody argues that the superior court erred or abused its discretion in the following ways: (1) by failing to apply the proper methodology in determining whether Moody was entitled to compensation for unpaid overtime; (2) by failing to apply the law of the case doctrine; (3) by declining to award liquidated damages; and (4) by failing to consider the public policy effects of its decision. Royal Wolf Lodge argues that the superior court erred by not awarding it attorney's fees.

## III.  STANDARD OF REVIEW

Whether a superior court "on remand has correctly applied our mandate is a question of law which we review de novo,"[12] as is "the interpretation of the controlling statutes and regulations."[13]

A "determination regarding subjective good faith is generally factual and reviewed for clear error," while a "determination regarding objective reasonableness 'involves applying the proper interpretation of the [law] to uncontested facts' " and is primarily a legal determination we review de novo.[14]  "Once it is established that the superior court did not err in finding clear and convincing evidence of good faith and

---

[12]    *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009) (quoting *Williams v. Crawford ex rel. Estate of McVey*, 47 P.3d 1077, 1079 (Alaska 2002)).

[13]    *Moody I*, 339 P.3d at 638.

[14]    *Air Logistics of Alaska*, 181 P.3d at 1097 n.57 (quoting *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir. 1990)).

reasonableness, the superior court's decision regarding whether or not to award any level of liquidated damages is reviewed for abuse of discretion."[15]

We review attorney's fees awards for abuse of discretion.[16] "An abuse of discretion exists if an award is 'arbitrary, capricious, manifestly unreasonable, or the result of an improper motive.' "[17] "The trial court's application of law in awarding attorney's fees is reviewed de novo."[18]

## IV. DISCUSSION

### A. Judge Marston Applied The Correct Methodology In Determining Whether Moody Was Owed Compensation For Unpaid Overtime.

Moody argues that Judge Marston used the wrong methodology in determining whether an employee like Moody is entitled to overtime pay. He points to the relevant federal regulation, 29 C.F.R. § 785.23, which recognizes that "[a]n employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises," because ordinarily he is given time to "engage in normal private pursuits" such as "eating, sleeping, [and] entertaining." The regulation also recognizes that in such cases it is "difficult to determine the exact hours worked," and therefore "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted."[19] The burden is on the employer to prove "plainly and unmistakably" both that (1) there was

---

[15]    *Id.* at 1097.

[16]    *Bachner Co. v. Weed*, 315 P.3d 1184, 1189 (Alaska 2013) (quoting *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252 (Alaska 2009)).

[17]    *Id.* (quoting *Krone*, 222 P.3d at 252).

[18]    *Id.* (citing *Krone,* 222 P.3d at 252).

[19]    29 C.F.R. § 785.23 (2017).

an agreement to compensate the employee for overtime work, and (2) "the agreement was 'reasonable,' having taken into account 'all of the pertinent facts.' "[20]

Moody asserts that there was such an agreement, that both Judge Joannides and our decision in *Moody I* recognized the agreement's existence and reasonableness, and that Judge Marston erred when he "undid the agreement" on remand. But we disagree that the factual issues central to Moody's overtime claim had been established for remand, and we conclude that Judge Marston applied the correct legal analysis to Moody's claim.

### 1. The decision on remand did not violate the law of the case.

Moody relies on the law of the case doctrine to argue that Judge Marston erred on remand by ignoring findings Judge Joannides made in the first trial and we affirmed in *Moody I*. "The law of the case doctrine . . . generally 'prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case,' " unless there are "exceptional circumstances" presenting "clear error constituting a manifest injustice."[21]

Moody asserts that "[Judge] Joannides found that the agreement between Moody and Royal Wolf [Lodge] under 29 C.F.R. § 785.23, which stated Moody was to be compensated for 72 hours of work in a six-day workweek, was reasonable" and that Royal Wolf Lodge has not challenged this finding. He observes that in *Moody I* we affirmed Judge Joannides's decision on all issues other than the applicability of the

---

[20] *Leever v. Carson City*, 360 F.3d 1014, 1018 (9th Cir. 2004) (quoting *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 941 (9th Cir. 2004)).

[21] *Beal v. Beal*, 209 P.3d 1012, 1016-17 (Alaska 2009) (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 & n.52 (Alaska 2003)).

professional services exemption.[22] Because AWHA requires overtime pay for any hours over 40 in a week,[23] he asserts that, following *Moody I*, his right to overtime pay was governed by the parties' reasonable agreement that he would work an additional 32 hours above the 40-hour maximum. He asserts that all Judge Marston was left to decide on remand, therefore, was "the proper compensation due [Moody] for [that] 32 hours of overtime as set forth in the agreement," as well as "how many more hours Moody was to be compensated for when he worked the seventh day in a week."

But Judge Joannides's finding that the parties' agreement was "reasonable" was in the context of her determination that Moody was an exempt professional employee who was not entitled to overtime pay under AWHA regardless of the number of hours he was required to work. She specifically declined to find "that the base salary was for only 40 hours of work," concluding that "even if the number of hours of work exceeded 40 hours, Moody would not be entitled to be paid additional funds unless he worked over 30 days per month and if he did not receive his paid days off." She therefore awarded Moody additional *base* pay for days he worked and for which he had not been compensated at all (July 31, August 31, and scheduled days off). She notably did *not* find that the agreements required Moody to work any particular number of hours. Her finding on this issue — that the parties' agreements were reasonable as to the pay of an exempt employee — cannot substitute for a determination whether the agreements were reasonable and accounted for "all of the pertinent facts"[24] as to a non-exempt employee.

---

[22] *Moody I*, 339 P.3d 636, 643-44 (Alaska 2014).

[23] AS 23.10.060(b).

[24] *Leever*, 360 F.3d at 1017 (quoting 29 C.F.R. § 785.23).

Our decision in *Moody I* stated the superior court's task on remand: to conduct "further proceedings on whether Moody in fact worked overtime as defined by AS 23.10.060 and whether he is entitled to recover compensation for unpaid overtime."[25] These open questions were inconsistent with a decision that Moody was contractually entitled to 32 hours of overtime pay. In a related footnote we stated: "Royal Wolf Lodge claims the superior court found that Moody never worked more than 40 hours per week[, b]ut the superior court merely disclaimed a factual finding on the issue."[26] We concluded "that this issue remains unresolved."[27] The trial on remand, exploring "whether Moody in fact worked overtime," was thus consistent with our view of what remained to be decided.

### 2. Judge Marston applied the correct legal test to the determination of overtime.

"The AWHA requires an employer to pay employees at the overtime rate of one and one-half times the regular rate for '*hours worked* in excess of eight hours a day' or forty hours a week."[28] The starting point for determining whether overtime pay is due is thus a determination of employee time spent "actually working."[29] Federal courts have "looked to two predominant factors when dealing with [the] question" of whether employees' time is so restricted that they deserve to be compensated for it: "(1) the degree to which the employee is free to engage in personal activities; and (2) the

---

[25]     *Moody I*, 339 P.3d at 642.

[26]     *Id.* at 642 n.38.

[27]     *Id.*

[28]     *Air Logistics of Alaska, Inc. v. Throop*, 181 P.3d 1084, 1090 (Alaska 2008) (emphasis in original) (quoting AS 23.10.060(b)).

[29]     *Id.*

agreements between the parties."[30]  We adopted this analysis in *Hutka v. Sisters of Providence in Washington*.[31]

When considering the first of these two factors — the employee's degree of personal freedom — we consider the following subsidiary factors from the Ninth Circuit Court of Appeals' case *Owens v. Local No. 169, Association of Western Pulp & Paper Workers*:

> (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time.[32]

The "list is illustrative, not exhaustive," and "[n]o one factor is dispositive."[33]

Consideration of the second factor of the two-part analysis — the parties' agreement — "assists the trier of fact in determining whether the parties characterized the time spent waiting on-call as actual work,"[34] but the agreement is not determinative.[35] Contractual provision for "at least some type of compensation for on-call waiting time

---

[30]    *Id.* at 1091 (quoting *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350 (9th Cir. 1992)).

[31]    102 P.3d 947, 959 (Alaska 2004).

[32]    *Air Logistics of Alaska*, 181 P.3d at 1091 (quoting *Owens*, 971 F.2d at 351).

[33]    *Id.*

[34]    *Id.* at 1093 (quoting *Berry v. County of Sonoma*, 30 F.3d 1174, 1180-81 (9th Cir. 1994)).

[35]    *See id.* at 1092 n.28.

may suggest the parties characterize waiting time as work," in contrast to an agreement that "employees are to be paid only for time spent actually working, and not merely waiting to work."[36]

Judge Marston properly applied this analytical framework. Consistent with the two-part analysis we adopted in *Hutka*, he considered both the impact of the parties' agreements and the *Owens* factors relevant to "making a determination as to whether an employee is free to engage in personal activities." He discussed the parties' agreements first, finding that they were "unclear and inconsistent" and that "the inconsistencies in the language . . . reflect . . . no meeting of the minds as to" job requirements, number of hours, or hourly rate. Therefore, "[w]hile parties are permitted to agree on what constitutes work hours in situations where an employee lives on the work site, such as Royal Wolf Lodge," the parties here had not reached such an agreement.

Judge Marston next considered the *Owens* factors. He found that (1) Moody "was required to reside on the premises because the job itself was being a pilot for a remote wilderness fly fishing lodge"; (2) there were no excessive geographic restrictions on Moody's mobility, as he was free to hike, fish, and explore on his own time and to run personal errands when he flew work-related trips to town; (3) the frequency of calls to work was not unduly restrictive as he usually knew his schedule well in advance and was rarely called to work on short notice; (4) he was generally not expected to stay in a particular location, ready to fly; and (5) he "was free to engage in personal activities during the time he was allegedly on call, and he did so": socializing

---

[36]     *Id.* at 1093 (quoting *Berry*, 30 F.3d at 1181).

with other employees, watching movies, reading, using the internet, and doing "laundry and other personal chores."[37]

Judge Marston then returned to the parties' agreements. He noted that none of them "contemplated on[-]call or standby time and there were no policies, written or otherwise, that required any of the pilots to be on call," and that one agreement — from 2007 — "specifically states there is no on[-]call or standby time." He concluded that because "the parties did not agree to . . . [or] require standby or on[-]call time," and because "in practice Mr. Moody was free to use his nonflying time for his own purposes, he was not engaged to wait, but rather was waiting to be engaged" — in other words, his time spent waiting was not his employer's but his own, and he was not entitled to be compensated for it.[38]

Judge Marston's factual findings are not challenged. He appropriately applied to those findings the multi-factor test identified in *Hutka* and *Owens*, reaching a conclusion that is well supported by the evidence. We see no error.[39]

---

[37]    The court found other *Owens* factors, "whether the on-call employee could easily trade on-call responsibilities" and "whether use of a pager could ease restrictions," irrelevant given its finding that Moody was generally not on call. *Owens*, 971 F.2d at 351.

[38]    In *Air Logistics of Alaska*, 181 P.3d at 1092, we found that "the isolated and inaccessible location" of the employer's premises and "the extended period of time" employees spent there outweighed other *Owens* factors favoring the employer. But unlike here, the disputed hours were compensable overtime because *both* prongs of the *Hutka* analysis — the *Owens* factors and the employment agreement — favored the employees. *Id.* at 1091-94.

[39]    Moody argues that Judge Marston's decision is contrary to public policy because Chris Branham admitted at trial that he failed to accurately report employee wages to interested federal and state agencies. He also notes Judge Joannides's finding

(continued...)

**B.** **Remand Is Necessary To Address The Subjective Good Faith Element Of Moody's Liquidated Damages Claim.**

Moody next argues that Judge Marston erred when he declined to award liquidated damages. "An employer who violates the overtime or minimum wage provisions of the AWHA is usually liable for both unpaid overtime or minimum wage and an equal amount in liquidated damages."[40] The only exception is when the employer can show good faith and reasonable grounds for believing it is in compliance; then "the court *may* decline to award liquidated damages" or award them in a reduced amount.[41] "This provision contains both a subjective element — that the employer acted in good faith — and an objective element — that the employer reasonably believed it was not violating AWHA's overtime provision."[42]

Moody asserts that "[t]here was no evidence whatsoever that [Royal Wolf Lodge] attempted to comply with [AWHA], as mandated by the statute,"[43] and particularly that there was no evidence the lodge "went to the Department of Labor to

---

[39] (...continued)
that the lodge likely terminated him "in part" because of his refusal "to take sides" in another employee's wage dispute and to support the lodge in a trooper investigation of "an illegal bear hunting incident involving Chris Branham." But Moody provides no legal analysis explaining why either of these arguments supports his claim to unpaid overtime compensation.

[40] *Air Logistics of Alaska*, 181 P.3d at 1097; AS 23.10.110(a) ("An employer who violates a provision of AS 23.10.060 or 23.10.065 is liable to an employee affected in the amount of unpaid minimum wages, or unpaid overtime compensation, as the case may be, and, except as provided in (d) of this section, in an additional equal amount as liquidated damages.").

[41] AS 23.10.110(d) (emphasis added).

[42] *Air Logistics of Alaska*, 181 P.3d at 1097.

[43] Emphasis omitted.

determine whether it was in compliance with [AWHA], [or] that the employer attempted to take affirmative steps to learn the law." Royal Wolf Lodge counters that Judge Marston conducted the proper analysis under the statute and that his finding that the lodge acted reasonably and in good faith is not clearly erroneous.

The only evidence Judge Marston cited in support of his conclusion that Royal Wolf Lodge acted reasonably and in good faith was Judge Joannides's conclusion, following the first trial, that Moody was an exempt employee. "[T]he closeness of the legal question" may indeed bear "on the issue of objective reasonableness," even if the employer's interpretation is eventually rejected by the courts.[44] But a finding of both objective reasonableness *and subjective good faith* requires more: "For example, an employer who does not take affirmative steps to learn the law will not be able to show good faith and reasonableness."[45] In both *Air Logistics of Alaska*[46] and *Resurrection Bay Auto Parts, Inc. v. Alder*,[47] we discussed the types of evidence relevant to a finding that the employer acted in subjective good faith: this included contacting the Department of Labor, seeking a lawyer's advice, and clearly explaining its policies to its employees. We recognize that in this case, as Royal Wolf Lodge argues, the record contained evidence that could be relevant to a finding of subjective good faith. But the lack of specific findings on the issue inhibits meaningful appellate review.[48] We therefore

---

[44] *Air Logistics of Alaska*, 181 P.3d at 1099.

[45] *Id.* at 1098; *see also* AS 23.10.110(g) ("Failure to inquire into Alaska law is not consistent with a claim of good faith under this section.").

[46] 181 P.3d at 1097-99.

[47] 338 P.3d 305, 311 (Alaska 2014).

[48] *See Petrilla v. Petrilla*, 305 P.3d 302, 307 (Alaska 2013) ("We have held (continued...)

remand the issue to the superior court to expressly consider whether Royal Wolf Lodge acted with the subjective good faith required by the exception from the liquidated damages provision.

**C.     Judge Marston Did Not Err By Denying Royal Wolf Lodge Attorney's Fees.**

Under AS 23.10.110(f), a prevailing defendant who "previously made an offer of judgment to the plaintiff" is entitled to an award of attorney's fees "unless the plaintiff proves to the satisfaction of the court that the action was both brought and prosecuted in good faith and that the plaintiff had reasonable grounds for believing that the act or omission was in violation of AS 23.10.060." This statute "allows a defendant to collect attorney's fees in an action for unpaid overtime compensation only in the event of a frivolous or bad faith claim."[49] In its cross-appeal Royal Wolf Lodge argues that Judge Marston erred by failing to award the lodge its attorney's fees because the lodge was the prevailing party, it had made offers of judgment, and Moody had failed "to prosecute his AWHA claim in good faith and on reasonable grounds . . . during the second phase of litigation."[50] Royal Wolf Lodge argues that Moody should have recognized the weakness of his position following the first trial — especially given Judge Joannides's extensive findings about his free time during work days — and should have made some effort to discover and present "new or more detailed evidence in support of

---

[48]     (...continued)
on many occasions that the trial court must provide sufficient factual findings to enable appellate review."); *Olmstead v. Ziegler*, 42 P.3d 1102, 1107 (Alaska 2002) ("The trial court is required to enter sufficiently detailed findings of fact to allow for meaningful appellate review.").

[49]     *Diaz v. Silver Bay Logging, Inc.*, 55 P.3d 732, 737 n.11 (Alaska 2002).

[50]     Emphasis omitted.

his AWHA claim" on remand. Royal Wolf Lodge points out that Judge Marston reached essentially the same factual conclusions following remand as Judge Joannides had reached at the first trial.

We conclude that Judge Marston did not err in declining to award attorney's fees to Royal Wolf Lodge. The judge reasoned that "Moody's claim that he was 'engaged to wait,' while ultimately a losing one, involved a complex interpretation of law and fact that merited a full trial on the merits" and that "[r]egardless of a lack of further discovery on Moody's part, [he] pursued his legal claim on remand in good faith." These findings are supported by the record, including the superior court's extensive written findings and legal analysis following trial.[51] On these findings, the court properly concluded that AS 23.10.110(f) did not require an award of fees to Royal Wolf Lodge.

---

[51] We note the distinction between our remand of the liquidated damages issue — on the ground that the superior court failed to make specific findings of fact to support its finding that Royal Wolf Lodge acted with subjective good faith — and our decision to affirm the superior court's bare finding that Moody "pursued his legal claim on remand in good faith." Whether Royal Wolf Lodge acted in good faith for purposes of AS 23.10.110(d) relates to its conduct before Moody's suit was filed, i.e., whether the lodge's failure to pay overtime compensation was an "act or omission . . . made in good faith." The finding thus depends on evidence submitted by the parties. On the other hand, whether Moody acted in good faith for purposes of the attorney's fees provision, AS 23.10.110(f), relates to his conduct as a litigant, directly observable by the superior court. We have repeatedly held that "the trial court is in the best position to evaluate a litigant's good faith" and are likely to defer to its determination of the issue. *Khalsa v. Chose*, 261 P.3d 367, 375 (Alaska 2011); *see also Reid v. Williams*, 964 P.2d 453, 461-62 (Alaska 1998) ("The superior court was in the best position to determine whether a party's behavior was excessively litigious or in bad faith.").

## V. CONCLUSION

We REMAND the liquidated damages issue to the superior court for its consideration of Royal Wolf Lodge's subjective good faith. In all other respects we AFFIRM the judgment of the superior court.